Filed 6/24/14  Fontes v. U.S. Bank National Assn. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CYNTHIA FONTES, et al.,<br><br>        Plaintiffs and Appellants,<br><br>        v.<br><br>U.S. BANK NATIONAL ASSOCIATION, et al.,<br><br>        Defendants and Respondents. | H038870<br>(Monterey County<br>Super. Ct. No. M113661)<br><br>ORDER MODIFYING OPINION |

BY THE COURT

It is ordered that the opinion filed herein on June 19, 2014, be modified as follows:

On page 10, line 2, replace the text beginning with "*Haddad*" with the following:

*Keshtgar v. U.S. Bank, N.A.* (2014) __ Cal.App.4th __[same]; *Yvanova v. New Century Mortgage Corp*. (2014) 226 Cal.App.4th 495 [same]; *Haddad v. Bank of America, N.A.* (S.D. Ca. 2014 2014 WL 67646 at p. 4 [citing numerous federal decisions rejecting *Glaski*].)

There is no change in judgment.

Dated:_____         _____

                                                                       ELIA, J.


_____         _____

RUSHING, P. J.                                                PREMO, J.

Filed 6/19/14  Fontes v. U.S. Bank National Assn. CA6 (unmodified version)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CYNTHIA FONTES, et al.,<br><br>      Plaintiffs and Appellants,<br><br>v.<br><br>U.S. BANK NATIONAL ASSOCIATION, et al.,<br><br>      Defendants and Respondents. | H038870<br>(Monterey County<br>Super. Ct. No. M113661) |

Plaintiffs Cynthia Fontes and Mike Maunu brought this action against JP Morgan Chase Bank, N.A. (Chase), U.S. Bank National Association (U.S. Bank), and California Reconveyance Company (CRC) to challenge the non-judicial foreclosure of their residence in Salinas.  The superior court sustained defendants' demurrer to plaintiffs' first amended complaint without leave to amend.  Plaintiffs appeal, contending that their pleading was sufficient to assert wrongful foreclosure and related causes of action.  We will affirm the judgment of dismissal.

*Background*

Because this appeal arises from the sustaining of a demurrer, our summary of the factual history is drawn primarily from the operative pleading, plaintiffs' first amended complaint.  Toward this end "we accept as true the properly pleaded material factual allegations of the complaint, together with facts that may properly be judicially noticed."

(*Crowley v. Katleman* (1994) 8 Cal.4th 666, 672; *Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.)

On October 19, 2004, Fontes financed her Salinas residence through a loan from Washington Mutual F.A., secured by a recorded deed of trust conveying title to CRC as trustee. Washington Mutual was identified as both lender and beneficiary in the document. The deed of trust included a provision that it could, along with the accompanying promissory note, be "sold one or more times without prior notice to the Borrower. A sale might result in a change in the entity (known as the 'Loan Servicer') that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law."

Shortly thereafter the loan was securitized and assigned to the MLMI 2005-A2 Trust, effective February 1, 2005, pursuant to a Pooling and Servicing Agreement, which was not submitted with the complaint or with the appellate record. As alleged in the complaint, Washington Mutual thereafter "acted solely as a servicer of the loan, and was neither Lender nor Beneficiary after [Washington Mutual's] sale of the mortgage."

On September 25, 2008, Washington Mutual was deemed a "Failed Bank" and its assets and liabilities were transferred by the Federal Deposit Insurance Corporation (FDIC), as receiver, to Chase, pursuant to a Purchase and Assumption Agreement. Among the assets purchased by Chase were "all mortgage servicing rights and obligations of the Failed Bank [i.e., Washington Mutual]."

On January 7, 2010, CRC recorded a notice of default stating that Fontes was behind in her payments as of September 1, 2009, totaling $13,875.83. The document identified CRC as trustee, Washington Mutual as beneficiary as of November 16, 2004, and Chase as the entity to contact in order to stop the foreclosure.

On April 8, 2010, CRC recorded a Notice of Trustee's Sale, announcing a sale of the property three weeks later. On this document, however, "KMUTUAL BANK, FA"

2

was incorrectly named as the beneficiary. On May 11, 2010, Fontes wrote Washington Mutual and Chase a 20-page letter she deemed a Qualified Written Request under the Real Estate Settlement and Procedures Act (12 U.S.C. §§ 2601, et seq.). In the letter Fontes suggested "deceptive and fraudulent servicing practices" by Washington Mutual, and she demanded evidence of the validity of the debt, including the "chain of transfer" to "wherever the security is now." Without such evidence, Fontes asserted, she had "no choice but to dispute the validity" of the debt and its ownership. Chase replied two weeks later, promising an investigation of the issues and a complete response.

On September 28, 2010, Fontes executed a quitclaim deed granting Maunu a 25% undivided interest in the property as a tenant in common.[1] On December 9, 2010, Chase executed an Assignment of Deed of Trust granting "all beneficial interest" under Fontes's deed of trust to U.S. Bank. At the same time CRC executed a Trustee's Deed Upon Sale granting the Property to U.S. Bank. Both documents identified U.S. Bank "as Trustee, successor in interest to Wachovia Bank, N.A., as Trustee, for MLMI 2005-A2." The Trustee's Deed Upon Sale also stated that the "Grantee" was the "foreclosing beneficiary."

Plaintiffs filed this action in pro per on August 16, 2011, against U.S. Bank, Chase, and CRC. On March 1, 2012, after defendants' demurrer was sustained with leave to amend, plaintiffs filed their first amended complaint. In this pleading, plaintiffs alleged wrongful foreclosure and sought to set aside the trustee's sale, cancel the recorded documents associated with the foreclosure (notice of default, notice of trustee's sale, assignment of deed of trust, and trustee's deed upon sale), and quiet title to the property.

---

[1] As defendants point out, a due-on-sale clause in the deed of trust was triggered by the transfer of the partial interest from Fontes to Maunu. Under this provision, if the borrower did not obtain the lender's consent before the transfer, the lender was entitled to require payment in full "of all sums secured" by the deed of trust, to the extent permitted by law.

3

Plaintiffs further alleged slander of title and unfair business practices under Business and Professions Code section 17200, and they demanded restitution and an accounting.

In essence, plaintiffs claimed that defendants had sold plaintiffs' home "without a lawful claim to the Property." Neither Chase (which was "nothing more than a servicer") nor U.S. bank was a proper assignee, plaintiffs alleged, and therefore neither had any authority to foreclose. The Purchase and Assumption Agreement was "a complete impossibility" because plaintiffs' note had previously been securitized. In addition to the improper assignment, the notice of default was itself defective, thereby voiding the entire sale. And foreclosure was improper in any event "due to the failed delivery, endorsement and conveyance to the MLMI Trust by the Closing Date and lack of a perfected secured interest."

Plaintiffs further alleged irregularities in the foreclosure procedure that made both the Assignment of Deed of Trust and the Trustee's Deed Upon Sale void. The former was void, according to plaintiffs, because it was signed by Karime Arias who was falsely represented to be an officer of Chase; furthermore, the notary's journal entry incorrectly stated that the assignment took place on December 9 rather than December 10, 2010. The Trustee's Deed Upon Sale was alleged to be void because the notary's journal entry misspelled the first name of Dalila Ochoa, the assistant secretary who signed the document on behalf of CRC.[2] Plaintiffs also called attention to the erroneous identification of KMutual Bank as beneficiary.

A key question that arose at the first demurrer hearing was whether either of the plaintiffs had actually made the required payments on the loan. Plaintiffs had alleged in their original complaint that Fontes's note was "not in default and Defendant[s] knew that it wasn't." But Maunu, representing both himself and Fontes, was not able to state

---

[2] The journal entry lists the signer of the document as "Dalilah Ochoa."

4

affirmatively that the complaint contained an allegation that he or Fontes had made the payments; he nonetheless insisted that the loan was not in default.[3]  In their first amended complaint, plaintiffs again claimed that the note "was not in default and Defendants knew that it wasn't," again without stating that they had in fact made the required payments.

Defendants' demurrer to the first amended complaint asserted primarily the lawfulness of the foreclosure process.  Plaintiffs, however, argued that "only the true lender and the true creditor can start the foreclosure process."  Chase was not the true lender or creditor, but only the servicer with "no right to collect payments."  It was therefore "not a true party in interest."  Plaintiffs maintained that the Fontes note and deed of trust could not have been acquired by Chase and then assigned to U.S. Bank because the note had already been sold in 2005 as one of 1,614 securitized loans in the MLMI 2005 A-2 Trust.  Because the "Deed of Trust follows the Note not the other way around," Chase had no interest on which the notice of default could be based and thus no interest to transfer.

In response to defendants' repeated observation that plaintiffs had not tendered the amount due, plaintiffs asserted that they had "no debt obligation on the property" and therefore "there is of course nothing to tender."  At the second demurrer hearing Maunu represented that the loan, following securitization, was "currently current" with the Securities & Exchange Commission.

---

[3] At that hearing, defense counsel acknowledged that if all the payments were in fact made as required, then "clearly there is an issue here" as to the validity of the foreclosure. He sought clarification of this fact, and the court asked Maunu, "Are the[re] specific paragraphs that you have notations of where you alleged in the complaint that you made all payments timely and to the correct party? [¶] PLAINTIFF MAUNU: I didn't say that we made them. If my aunt made them or somebody else made them – but they're not in default. In other words, we'll be able to provide expert witnesses and—"  The court interrupted and asked the question again, but Maunu did not direct the court to any specific allegation in the complaint.

The superior court, however, found the lack of tender dispositive and sustained the demurrer as to each cause of action without leave to amend. Plaintiffs thereafter opposed a motion by defendants for judgment of dismissal. They insisted that the "alleged Note is not in default," none of the defendants was a "real party in interest" with the right to collect payments, and tender was not required. Nevertheless, on June 22, 2012, the court granted the motion and entered judgment for defendants. This appeal followed.

*Discussion*

*1. Standard and Scope of Review*

A demurrer is properly sustained when the complaint "does not state facts sufficient to constitute a cause of action." (Code Civ. Proc., § 430.10, subd. (e).) "On appeal from a dismissal following the sustaining of a demurrer, this court reviews the complaint de novo to determine whether it alleges facts stating a cause of action under any legal theory. . . . [¶] Because the function of a demurrer is not to test the truth or accuracy of the facts alleged in the complaint, we assume the truth of all properly pleaded factual allegations. [Citation.] Whether the plaintiff will be able to prove these allegations is not relevant; our focus is on the *legal* sufficiency of the complaint." (*Los Altos Golf and Country Club v. County of Santa Clara* (2008) 165 Cal.App.4th 198, 203; see also *Leyte-Vidal v. Semel* (2013) 220 Cal.App.4th 1001.)

We also examine the exhibits attached to the complaint. "If the facts appearing in the attached exhibit contradict those expressly pleaded, [the facts] in the exhibit are given precedence." (*Mead v. Sanwa Bank California* (1998) 61 Cal.App.4th 561, 567-568; *Freeny v. City of San Buenaventura* (2013) 216 Cal.App.4th 1333, 1337.) "We do not, however, assume the truth of 'mere contentions or assertions contradicted by judicially noticeable facts.' " (*Debrunner v. Deutsche Bank Nat. Trust Co.* (2012) 204 Cal.App.4th 433, 438-39, quoting *Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20; see also *Blatty v. New York Times Co.* (1986) 42 Cal.3d 1033, 1040 ["when the allegations of the complaint contradict or are inconsistent with such facts, we accept the latter and reject the

6

former"].)  Plaintiffs attached numerous documents to their pleading, including the deed of trust and the Purchase and Assumption Agreement.

Both parties asked the superior court to take judicial notice of the "Notice of Default and Election to Sell under Deed of Trust," the "Notice of Trustee's Sale," the "Assignment of Deed of Trust," and the "Trustee's Deed Upon Sale."  In addition, defendants requested judicial notice of the quitclaim deed executed by Fontes in Maunu's favor on September 28, 2010.  The trial court properly took judicial notice of the existence and legal effect of these documents.  (*Poseidon Development, Inc. v. Woodland Lane Estates, LLC* (2007) 152 Cal.App.4th 1106, 1118; *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 265.)  "The official act of recordation and the common use of a notary public in the execution of such documents assure their reliability, and the maintenance of the documents in the recorder's office makes their existence and text capable of ready confirmation, thereby placing such documents beyond reasonable dispute."  (*Fontenot v. Wells Fargo Bank, N.A.*, *supra*, 198 Cal.App.4th at pp. 264-265.)  Accordingly, it is not improper to take judicial notice of "the fact of a document's recordation, the date the document was recorded and executed, the parties to the transaction reflected in a recorded document, and the document's legally operative language, assuming there is no genuine dispute regarding the document's authenticity."  (*Id*. at p. 265.)  Plaintiffs do not contest this principle, and they acknowledge that "the facts of which the trial court here took judicial notice arose from the *legal effect* of the documents, rather than any statements of fact within them."

It is indeed the legal effect of these documents that plaintiffs are challenging.[4]  The gravamen of their position on appeal is twofold:  (1) "There was no default in the

---

[4] Plaintiffs emphasize that they are no longer relying on "irregularities" or clerical errors as the basis of their complaint; hence, the allegations on this ground in the third cause of action (cancellation of instruments) and seventh cause of action (unfair business

7

obligation" and (2) Chase was only a servicer, "not the beneficiary or creditor" of the note and deed of trust, and it therefore had no legal authority to declare a default. Plaintiffs also repeat the assertion in their complaint that once the note was sold to the MLMI 2005 A-2 trust, Washington Mutual was no longer the beneficiary and could not transfer its interest to Chase as anything but a servicer. In other words, plaintiffs claimed, it is only the creditor, the entity that is "entitled to payment on the Note," that can be a beneficiary with the power of sale; without that "pecuniary interest in the Note," Chase had no authority to sell the property.

In making these arguments, however, plaintiffs err in a fundamental respect by misperceiving the difference between facts and legal assertions. They insist that they alleged "facts, not conclusions, that the trustee's deed upon sale was void on its face, that the power of sale clause was invoked without authority, and that tender did not apply." They maintain that the court was required to accept plaintiffs' allegations "that Chase could not enforce the debt as a beneficiary, that the strict provisions of the deed of trust were not followed and that only the 'lender' can invoke non-judicial foreclosure and subsequently instruct the trustee to foreclose." These are all legal assertions that depend on specific facts. It is not enough to allege that they met all the elements of each cause of action if the underlying facts are not stated. The superior court properly undertook to determine, based on the facts that *were* pleaded, whether plaintiffs' complaint stated viable causes of action under applicable statutory and judicial authority.

2. *The Effect of Securitization*

In their complaint plaintiffs hedged their position by asserting two divergent approaches to the consequences of the securitization. If the note and deed of trust were conveyed to the MLMI 2005 A-2 trust, then plaintiffs were "a party to and in privity

practices) are considered abandoned. It is therefore unnecessary to address defendants' argument that those errors did not result in prejudice to plaintiffs.

8

with" that trust. Because "an obligation paid is an obligation extinguished," plaintiffs alleged, "[Fontes's] mortgage obligation has been paid and there is no default." If, on the other hand, the note and deed of trust "were never properly and legally delivered to that Trust," as plaintiffs separately alleged, then plaintiffs "assume[d]" that they were "in privity with the true creditor, whomsoever [*sic*] that may be."

Thus, while simultaneously denying the legal effectiveness of the securitization process, plaintiffs alleged that the securitization terminated their obligation to make payments on Fontes's loan. On appeal plaintiffs continue to claim that the MLMI 2005-A2 trust "failed to perfect its security interest in the note and underlying deed of trust," because the securitizing parties failed to comply with New York trust law and the conditions of the trust documents. Plaintiffs, however, lack standing to assert defects in the securitization procedure. (See, e.g., *Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal. App. 4th 497, 515 (*Jenkins*) [plaintiff lacked standing to assert invalidity of foreclosure based on noncompliance with investment trust's pooling and servicing agreement]; see also *Almutarreb v. Bank of New York Trust Co., N.A.* (N.D. Cal., Sept. 24, 2012, C-12-3061 EMC) 2012 WL 4371410 [joining numerous other federal district courts in holding that "because Plaintiffs were not parties to the PSA [Pooling and Servicing Agreement], they lack standing to challenge the validity of the securitization process, including whether the loan transfer occurred outside the temporal bounds prescribed by the PSA"]; see also *In re Sandri* (2013) 501 B.R. 369, 374-375 [explicitly rejecting contrary holding of *Glaski v. Bank of America, National Association* (2013) 218 Cal.App.4th 1079, 1098 on the standing issue]; *Haddad v. Bank of America, N.A.* (S.D. Ca. 2014) 2014 WL 67646 at p. 4 [citing numerous decisions rejecting *Glaski*].)

Even if plaintiffs have such standing, any infirmity in the securitization process would not have relieved Fontes of her obligation to make the payments required under the deed of trust. As the Fourth District, Division Three, explained in *Jenkins, supra,* 216 Cal.App.4th at pp. 514-515, "even if the asserted improper securitization . . . occurred,

9

the relevant parties to such a transaction were the holders (transferors) of the promissory note and the third party acquirers (transferees) of the note. 'Because a promissory note is a negotiable instrument, a borrower must anticipate [that] it can and might be transferred to another creditor. As to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note.' " (*Id*. at pp. 514-515, quoting *Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1507 [no prejudice from allegedly void assignment].)

Moreover, as the Second District, Division Three, observed in *Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 85, plaintiffs "fail to allege any facts showing that they suffered prejudice as a result of any lack of authority of the parties participating in the foreclosure process. [Plaintiffs] do not dispute that they are in default under the note. The assignment of the deed of trust and the note did not change [plaintiffs'] obligations under the note, and there is no reason to believe that . . . the original lender would have refrained from foreclosure in these circumstances. Absent any prejudice, [plaintiffs] have no standing to complain about any alleged lack of authority or defective assignment." (See also *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 272 [plaintiff in wrongful foreclosure suit must show that "the alleged imperfection in the foreclosure process was prejudicial to the plaintiff's interests"].)

Consequently, even if the transfers made in 2008 and 2010 were invalid, Fontes "was not the victim of such invalid transfers because her obligations under the note remained unchanged." (*Jenkins, supra,* 216 Cal.App.4th at p. 515.) Finally, if plaintiffs are correct that the securitization was ineffective, then they cannot support their alternative argument, that the securitization precluded the 2008 Purchase and Assumption Agreement between the FDIC and Chase and the 2010 assignment from Chase to U.S. Bank. Plaintiffs' argument that the securitization somehow nullified their obligation to make loan payments is simply not well taken.

10

*2. Chase's Authority to Foreclose*

Although they continue to argue that the loan was not in default, plaintiffs have never claimed that they made all of the required payments under the note, nor have they alleged an effort to tender the delinquent amount. Instead, they maintain that tender was unnecessary because Chase had no authority to foreclose, as it was not the beneficiary. Neither their first premise, that Chase was not the beneficiary, nor the second, that Chase had no authority to foreclose, permits the conclusion that the foreclosure was invalid. Civil Code section 2924, subdivision (a)(1),[5] is part of a comprehensive legislative scheme which is designed " '(1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser.' [Citation.]" (*Debrunner v. Deutsche Bank Nat. Trust Co.*, *supra,* 204 Cal.App.4th at p. 440.) " 'Because of the exhaustive nature of this scheme, California appellate courts have refused to read any additional requirements into the non-judicial foreclosure statute.' " (*Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 82.)

Section 2924, subdivision (a)(1), sets forth the required elements of the notice of default, including a statement of the beneficiary's election to "sell or cause to be sold the property to satisfy that obligation and any other obligation secured by the deed of trust or mortgage that is in default." (Civ. Code § 2924, subd. (a)(1)(C).) Plaintiffs concede that section 2924, subdivision (a)(1), authorizes a "trustee, mortgagee, or beneficiary, or any of their authorized agents" to record the notice of default.[6] Clearly the statute does not

---

[5] All further statutory references are to the Civil Code except as otherwise indicated.

[6] The statute specifies the conditions of filing a notice of default as follows: "(1) The trustee, mortgagee, or beneficiary, or any of their authorized agents shall first file for record, in the office of the recorder of each county wherein the mortgaged or trust property or some part or parcel thereof is situated, a notice of default. That notice of

11

limit the power of sale to the beneficiary, as plaintiffs contend.  Accordingly, as trustee CRC was entitled to record a notice of default and proceed with the sale.  This conclusion is consistent with our holding in *Debrunner v. Deutsche Bank Nat. Trust Co.* (2012) 204 Cal.App.4th 433, where we rejected the theory that only the entity in possession of the note may foreclose.  In that case we observed that " '[t]here is no stated requirement in California's non-judicial foreclosure scheme that requires a beneficial interest in the Note to foreclose. Rather, the statute broadly allows a trustee, mortgagee, beneficiary, or any of their agents to initiate non-judicial foreclosure.  Accordingly, the statute does not require a beneficial interest in both the Note and the Deed of Trust to commence a non-judicial foreclosure sale.' " (*Id*. at p. 441, quoting *Lane v. Vitek Real Estate Indus. Group* (E.D.Cal.2010) 713 F.Supp.2d 1092, 1099; see also *Jenkins*, *supra*, 216 Cal.App.4th at p. 515-516 [notice of default proper where recorded by agent of beneficiary]; *Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 85 [same]; *Perlas v. Mortgage Elec. Registration Systems, Inc.* (N.D.Cal.2010) 2010 WL 3079262 ["There is no requirement in California that the foreclosure be initiated by the lender itself"].)[7]

---

default shall include all of the following: [¶]  (A) A statement identifying the mortgage or deed of trust by stating the name or names of the trustor or trustors and giving the book and page, or instrument number, if applicable, where the mortgage or deed of trust is recorded or a description of the mortgaged or trust property. [¶]  (B) A statement that a breach of the obligation for which the mortgage or transfer in trust is security has occurred. [¶]  (C) A statement setting forth the nature of each breach actually known to the beneficiary and of his or her election to sell or cause to be sold the property to satisfy that obligation and any other obligation secured by the deed of trust or mortgage that is in default. [¶]  (D) If the default is curable pursuant to Section 2924c, the statement specified in paragraph (1) of subdivision (b) of Section 2924c." (Civ. Code § 2924.)

[7] Plaintiffs do not identify the "actual beneficiary," but only fault Chase for exercising the power of sale reserved for that entity.  At the final demurrer hearing Maunu repeated that Chase was not the "real party in interest," followed by the rhetorical question, "So if that's the case, who initiated the acceleration of the loan note and caused the trustee to file the notice of default? . . .[W]ho's the real party in interest here . . . ?"

12

The deed of trust bearing Fontes's notarized signature is consistent with section 2924, subdivision (a)(1), by stating that "Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the . . . property . . . " The trustee in this case was CRC, which did record the notice of default. That fact alone reveals a further unsupported premise in plaintiffs' argument that Chase lacked the power of sale. It was CRC that conducted the foreclosure, in accordance with the applicable statutory provisions and with the deed of trust. (Cf. *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1157 [deed of trust reflected plaintiffs' agreement that MERS could initiate foreclosure, thus precluding suit disputing that authority]; accord, *Robinson v. Countrywide Home Loans, Inc.* (2011) 199 Cal.App.4th 42, 46-47.)

Plaintiffs' assertion that the loan was not in default is based solely on a declaration of their witness, Joseph R. Esquivel, Jr., who had conducted research on MLMI 2005-A2. Plaintiffs attached Esquivel's declaration but did not ask the court to take judicial notice of it; and even if they had, the court would not have judicially noticed the fact asserted within it, that the securitized loan was "[c]urrent in its status as a performing asset in this pool of mortgage backed securities." It was clear to the superior court-- and plaintiffs have not represented otherwise-- that Fontes fell behind in her monthly payments and did not tender the amount due when the notice of default was issued.

Plaintiffs protest, however, that tender was not required because 1) defendants were not entitled to enforce the obligation, 2) the trustee's sale was "knowingly wrongful and without right," and 3) full tender would have "unjustly enriched U.S. Bank as it was not expecting payment in full for another 23 or more years. As we have already determined, these purported justifications are merely legal conclusions that are unsupported either by statutory or judicial authority. Plaintiffs offered no *facts* obviating or excusing tender, such as allegations that Fontes had actually made the payments, that irregularity in the notice and sale procedures caused prejudice to plaintiffs, or that Fontes's tender was improperly rejected. Plaintiffs' further suggestion that tender was

13

excused on equitable grounds is likewise without merit, as none of the recognized equitable exceptions is applicable here. Plaintiffs do not, for example, complain that the underlying loan and deed of trust were void for unconscionability or any other reason; they do not claim an offset that exceeds the amount due; and they do not allege voidness of the trustee's deed on its face. This is not a situation comparable to *Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 111, where defendants failed to present evidence responding to the allegations that the debtor's English was limited, that no one explained the documents to him, that he did not understand what he was signing, and that the loan broker ignored his inability to repay the loan. Thus, in this case the superior court properly concluded that the foreclosure and trustee's sale were justified by Fontes's default.

The conclusion that the foreclosure was proper is dispositive of all of plaintiffs' causes of action, as each one is predicated on the alleged lack of authority to declare plaintiffs' default and sell the property. Plaintiffs do not complain that the superior court should have granted leave to amend, because they believe they adequately pleaded all elements of each cause of action. In other words, they "did not need to suggest how the [first amended complaint] could be amended because it did not need to be amended." Because none of plaintiffs' causes of action was sustainable on the facts alleged, the court properly entered the judgment of dismissal without granting any further leave to amend.

14

*Disposition*

The judgment is affirmed.

_____

ELIA, J.

WE CONCUR:

_____

RUSHING, P. J.

_____

PREMO, J.