Filed 7/22/14  Certified for Publication 8/11/14 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| MARIA MENDOZA, | C071882 |
| Plaintiff and Appellant, | (Super. Ct. No. 39201100267960CUORSTK) |
| v. | |
| JPMORGAN CHASE BANK, N.A. et al., | |
| Defendants and Respondents. | |

In this case, we examine issues arising from plaintiff Maria Mendoza's purchase of a home with proceeds of a loan secured by a deed of trust, and the subsequent loss of the home in a nonjudicial foreclosure sale.  The trial court sustained the banks' demurrer to plaintiff's complaint without leave to amend.  It rejected her attempt to void the trustee's sale based on purported defects in the assignment of her deed of trust, irregularities in the substitution of trustees, and flaws in the securitization of her loan. The homeowner contends that not only should she be allowed to remain in her home, but that she is entitled to outright ownership without paying her debt because the banks have

1

been guilty of egregious wrongdoings and have been the beneficiaries of the federal government's largesse.

In affirming the trial court's dismissal of the second amended complaint for wrongful foreclosure, declaratory relief, and quiet title, we conclude 1) plaintiff has failed to make a specific factual showing that the foreclosing parties did not have the requisite interest in the property to issue the notice of default, the notice of trustee's sale, and the trustee's deed of sale; and 2) in the absence of prejudice, she lacks standing to challenge irregularities in the securitization process.

## FACTUAL ALLEGATIONS

The second amended complaint, from which we extract the facts for purposes of this appeal, alleges irregularities in the assignment of the Mendoza deed of trust and defects in the process by which the Mendoza loan was "securitized." As alleged, these defects left the foreclosing entities without title to the property and without authority to foreclose. We first summarize plaintiff's description of the loan and foreclosure processes and then consider plaintiff's accounting of the flaws in those processes that entitle her to the relief sought.

**The Loan, Assignment of Deed of Trust, and Substitution of Trustee**

In November 2007 Maria and Juan Mendoza borrowed $540,600 from defendant JPMorgan Chase Bank, N.A. (Chase), secured by a deed of trust. The deed of trust identifies the Mendozas as the "Borrowers," Chase as the "Lender," and North American Title Company as the "Trustee."[1]

On March 7, 2011, three documents were recorded in the following order: Chase assigned "all beneficial interest" in the Mendoza deed of trust to Chase Home Finance LLC; Chase Home Finance LLC, as the "present Beneficiary under [the Mendozas']

---

[1] Juan Mendoza filed a timely notice of appeal, but that appeal was dismissed on May 9, 2013, for failure to file an opening brief. (Cal. Rules of Court, rule 8.220(a)(1).)

Deed of Trust," substituted California Reconveyance Company for North American Title Company as the trustee; and California Reconveyance Company, as trustee, issued a "Notice of Default and Election to Sell Under Deed of Trust." Colleen Irby signed the assignment as an officer of Chase, but according to plaintiff, Irby's profile page on LinkedIn.com identifies her as an employee of California Reconveyance Company. Plaintiff alleges, therefore, that Irby fraudulently executed the assignment and Irby was nothing more than what has come to be known as a "robo-signer" -- "an individual who simply signs thousands of property record documents without any legal or corporate authority whatsoever." The notary, Carla Dodd, who notarized Irby's signature was also, according to plaintiff, a "part of this scheme by the bank defendants." Plaintiff alleges that the substitution of the trustee was similarly fraudulent.

On June 8, 2011, California Reconveyance Company gave "Notice of Trustee's Sale" to occur on June 29, 2011. On July 5, 2011, California Reconveyance Company recorded a "Trustee's Deed Upon Sale." The Trustee's Deed Upon Sale recites that the grantee, Chase Home Finance LLC, was the highest bidder at a public auction held on June 29, 2011, and purchased the property for $262,144.00. California Reconveyance Company, as trustee, conveyed title to plaintiff's home to Chase, "successor by merger to Chase Home Finance LLC."

After two unsuccessful attempts to state viable causes of action against defendants, in April 2012 plaintiff filed a second amended complaint for wrongful foreclosure, quiet title, and declaratory relief against Chase; Chase Mortgage Finance Corporation; Chase Home Finance, LLC; California Reconveyance Company; The Bank of New York Trust Company, N.A. [(BONY)], Trustee for the Multi-Class Mortgage Pass-Through Certificates Series 2007-A3 and/or Series 2007-S6; North American Title Company; Colleen Irby; and Carla Dodd. In June the trial court sustained defendants' demurrer without leave to amend and entered judgment in favor of defendants on July 10, 2012.

3

**The Securitization Process**

The general allegations in the second amended complaint contain a long dissertation on the evils of Wall Street's greed and the securitization of predatory loans. Plaintiff's description of foreclosure abuse generally, as extracted from the popular media, is fully developed, but her allegations of the specific flaws in the securitization of her specific loan are quite sparse. Apparently, an essential step in the process of securitizing a loan is the transfer of the promissory note and deed of trust into a trust. Plaintiff identifies two trusts, "Trust 2007-A3" and "Trust 2007-S6," and directs us to the Internet to examine pooling and servicing agreements (PSA's) filed with the Securities and Exchange Commission establishing rules for such transfers. She alleges that the PSA's establish cutoff dates (November 29, 2006, and November 28, 2007) by which loan closings must take place to be included in either trust.

Plaintiff alleges that because her loan was executed well before the closing dates, it was eligible for inclusion in the trusts and defendant banks "intended to transform, sell, convey or otherwise transfer title, for consideration, the Note and [Deed of Trust] from debt instruments into Defendant Trusts 2007-A3, A6 or Doe 1 as securities or stocks through the 'Securitization' process." According to plaintiff, however, the " 'true sales' " never took place because defendant banks failed to follow "the basic legal requirements for the transfer of non-negotiable instruments and thereby, the legal, equitable, and pecuniary interest in Plaintiffs' Note and [Deed of Trust]." As a consequence, plaintiff asserts that Chase and Chase Home Finance LLC, "which purport to be Plaintiffs' creditors and/or purported owners of the Plaintiffs' Home, actually have no right, title, or interest in Plaintiffs' Note and [Deed of Trust], and have no right to collect mortgage payments, demand mortgage payments, report derogatorily against Plaintiffs' credit, or foreclose on Plaintiffs' Home."

Plaintiff accuses the banks of trampling on a hapless homeowner but does not dispute that she is in default. She alleges: "[T]he bank defendants are attempting to take

4

advantage of the complex structured finance system to defraud yet another homeowner. Having already benefitted from an American taxpayer bailout of unprecedented proportions, Plaintiffs are informed and believe, and thereon allege, that the bank defendants will oppose this [Second Amended Complaint] and seek a Court - sanctioned bailout by attempting to validate the blatantly fabricated 'Assignment' of the [Deed of Trust] and Substitution . . . and as a consequence thereby the Trustee's Deed upon Sale . . . , thereby committing fraud on the Court, and misleading the Plaintiffs into believing that the bank defendants were their actual creditors and were entitled to foreclose on their home." With a flair for the dramatic, plaintiff attempts to synthesize her allegations: "Simply put, the Court should not allow the bank defendants to trample over 200 years of well-settled property laws just because Plaintiffs at one time 'owed somebody the money'."

Because plaintiff's note and deed of trust were not properly transferred into the trusts before the applicable closing dates, plaintiff alleges that neither the note nor the deed of trust was part of Trust 2007-A3, Trust 2007-S6, or Doe 1. The second amended complaint concludes: "The failure to deposit the Note into the Trust 2007-A3, Trust 2007-S6, or Doe 1 before the closing date is a violation of the PSAs and of New York trust law. Consequently, Trust 2007-A3, Trust 2007-S6 or Doe 1 cannot claim any legal or equitable right, title, or interest in Plaintiffs' Note and [Deed of Trust] since BONY or Doe 2 cannot take any action which is not authorized by the Securitization agreements that created and govern Trust 2007-A3, Trust 2007-S6 or Doe 1."

In short, plaintiff alleges that the securitization failed. Her loan never made it into the trust. But apparently, in her view, Chase's beneficial interest vanished once it signed the PSA, a document that is not part of the record on appeal. And once Chase's beneficial interest evaporated, plaintiff asserts the bank acted with malice by recording an assignment of an interest it knew it did not possess, fully aware that the ensuing notice of default and all that followed were void.

5

Reading more like an op-ed piece than a complaint, plaintiff describes a litany of bad bank practices and summarizes a number of "Relatively Recent Developments," including actions taken by the California Attorney General, the Office of the Comptroller of the Currency, and various insurance companies against Chase.

Plaintiff alleges she "[has] suffered, and continue[s] to suffer significant monetary, legal and equitable damage" as a result of the banks' pattern of conduct. Specifically, she asserts she and her husband have been damaged in the following ways: "(1) they have been paying the wrong party for an undetermined amount of time and overpaid interest and other penalties that were miscalculated; (2) they have suffered damage to their credit reports and scores; (3) the title to Plaintiffs' Home has been lost through a wrongful foreclosure; (4) Plaintiffs are facing imminent eviction from their home; (5) Plaintiffs have expended significant funds to cover the cost of attorneys' fees and related costs; (6) Plaintiffs have suffered damage to their reputation in the community; (7) Plaintiffs are unable to determine whether they sent their monthly mortgage payments to the right party; (8) multiple parties may seek to enforce their debt obligation against Plaintiffs; and (9) any would-be buyer of Plaintiffs' home will find themselves in legal limbo, unable to know with any certainty whether they can safely buy Plaintiffs' home or get title insurance."

Plaintiff appeals the dismissal of her action following the trial court's ruling sustaining defendants' demurrer without leave to amend.

**DISCUSSION**

**I**

The purpose of a demurrer is to test the sufficiency of the pleadings to state a cause of action as a matter of law. (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1153 (*Gomes*).) We must assume the truth of all properly pleaded facts as well as those that are judicially noticeable. (*Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1501 (*Herrera*).) We are not concerned

6

with plaintiff's ability to prove the allegations or with any possible difficulties in making such proof. Our review is de novo. (*Aguilera v. Heiman* (2009) 174 Cal.App.4th 590, 595.)

Where, as here, the trial court sustains the demurrer without leave to amend, we must decide whether there is a reasonable possibility the plaintiff can cure the defect with an amendment. (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 506 (*Jenkins*).) If we find that an amendment could cure the defect, we must find the court abused its discretion and reverse. If not, the court has not abused its discretion. Plaintiff bears the burden of proving an amendment would cure the defect. (*Gomes*, *supra*, 192 Cal.App.4th at p. 1153.)

## II

Over the course of several iterations, plaintiff has pared down her complaint to three alleged causes of action—wrongful foreclosure, quiet title, and declaratory relief. We begin with her claim of wrongful foreclosure, based on the premise that the foreclosure sale was void because the botched attempt to securitize her loan poisoned the subsequent foreclosure, and/or because the assignment of the deed of trust and the substitution of trustee were fraudulently executed by a robo-signer.[2] We will consider issues of securitization and robo-signing in turn, but first we should briefly discuss defendants' argument that plaintiff's claims are barred by her failure to tender payment of her debt.

---

[2] The second amended complaint does not allege the foreclosure is void because defendants failed to comply with the notice and contact requirements set forth in Civil Code section 2923.5, yet on appeal plaintiff argues that defendants' failure to comply with section 2923.5 voids the sale. We agree with defendants that the issue cannot be raised for the first time on appeal.

7

**Tender**

As a general rule, a homeowner in default must first tender payment of the obligation in full to achieve standing to challenge nonjudicial foreclosure proceedings. (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 112 (*Lona*).) Defendants contend the tender rule bars plaintiff's wrongful foreclosure claim. "The tender rule is an equitable doctrine that prevents a court from uselessly setting aside a foreclosure sale on a technical ground when the borrower making the challenge has not established the ability to purchase the property." (*Maynard v. Wells Fargo Bank, N.A.* (S.D.Cal., Sept. 11, 2013, No. 12cv1435 AJB (JMA)) 2013 U.S. Dist. Lexis 130800 at p. *18 (*Maynard*).) The tender rules are strictly applied and it is a debtor's obligation to make an unambiguous tender of the entire amount of the debt. (*Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 445-446.)

But the tender rule presents no obstacle if the sale is void. (See, e.g., *Lona*, *supra*, 202 Cal.App.4th at pp. 113-114; *Humboldt Sav. Bank v. McCleverty* (1911) 161 Cal. 285, 291.) "Where a trustee sale is void tender need not be alleged because the action is not based in equity." (*Halajian v. Deutsche Bank Nat. Trust Co.* (2013 E.D.Cal., Feb. 14, 2013, No. 1: 12 - CV - 00814 AWI GSA) 2013 U.S. Dist. Lexis 20341 at p. *21 (*Halajian*).) Indeed, an unambiguous viable tender of payment of the indebtedness is only required in an action to set aside a voidable sale under a deed of trust. (*Karlsen v. American Sav. & Loan Assn.* (1971) 15 Cal.App.3d 112, 117.) Or, as one court aptly observed, to require tender in a wrongful foreclosure action based on a void sale "would permit entities to foreclose on properties with impunity." (*Sacchi v. Mortgage Electronic Registration Systems, Inc.*, (2011 C.D.Cal., June 24, 2011, No. CV 11-1658 AHM (CWx)) 2011 U.S. Dist. Lexis 68007 at p. *28 (*Sacchi*).) Whether the tender rule applies requires us to first consider the gravamen of plaintiff's complaint: that the foreclosure sale is void because of defects in the securitization process or on account of the

8

fraudulent substitution of the trustee by a robo-signer. For that reason, tender cannot be a threshold issue and we must instead resolve the issues raised in plaintiff's complaint.

**Securitization**

Plaintiff alleges that her loan was not properly securitized in that it was not transferred into the trust before its closing date. Indeed, the second amended complaint, though hard to follow, appears to allege that plaintiff's loan never became a part of the trust at all and that the securitization of her loan deprived the beneficiary of the deed of trust the legal right to foreclose.

Courts have rejected homeowners' claims that securitization inherently changes the roles of the original parties. "[T]he securitization of a loan does not in fact alter or affect the legal beneficiary's standing to enforce the deed of trust." (*Reyes v. GMAC Mortgage LLC* (2011 D.Nev., Apr. 5, 2011, No. 2:11-CV-100 JRM (RJJ)) 2011 U.S. Dist. Lexis 40953 at p. *6.) Securitization " 'merely creates a "separate contract, distinct from [p]laintiffs['] debt obligations" ' under the note and does not change the relationship of the parties in any way . . . ." (*Id*. at p. *7.) Irregularities during securitization are fundamentally different from a failure to follow the statutory requirements set forth in California's nonjudicial foreclosure scheme.

Civil Code sections 2924 through 2924k, which set forth California's nonjudicial foreclosure scheme, " 'provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust.' [Citation.] 'These provisions cover every aspect of exercise of the power of sale contained in a deed of trust.' [Citation.] 'The purposes of this comprehensive scheme are threefold: (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser.' [Citation.] 'Because of the exhaustive nature of this scheme, California appellate courts have refused to read any

9

additional requirements into the non-judicial foreclosure statute.' [Citations.]" (*Gomes*, *supra*, 192 Cal.App.4th at p. 1154; see *Lane v. Vitek Real Estate Industries Group* (2010) 713 F.Supp.2d 1092, 1098.)

It is true that if someone without power to convey property executes a deed pursuant to this rigid statutory scheme, the deed is void, not voidable. (*Dimock v. Emerald Properties* (2000) 81 Cal.App.4th 868, 876.) *Sacchi*, *supra*, 2011 U.S. Dist. Lexis 68007 provides a prime example wherein Residential Credit Solutions, Inc. (RCS) executed a substitution of trustee a month before Mortgage Electronic Registration Systems, Inc. (MERS), executed an assignment of deed of trust in favor of RCS. (*Id*. at p. *16.) The substituted trustee thereafter gave notice of trustee's sale and the homeowner's house was sold. Because RCS had no legal interest in the deed, the substitution and "all of the events that flowed from this substitution [were] invalid." (*Ibid*.) The federal district court denied the banks' motion to dismiss the homeowner's complaint.

But there is a critical distinction between a glitch in an attempted securitization and an attempt to pass title by an entity without any interest to convey, a distinction we address below.

### 1.    *Standing*

Many courts have aborted homeowners' lawsuits following foreclosure, holding that the homeowners did not have standing to challenge a vast array of irregularities in the transfer of rights and obligations under assignments and substitutions. (*Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 82 (*Siliga*); *Jenkins*, *supra*, 216 Cal.App.4th at p. 511.) "California's nonjudicial foreclosure scheme does not 'provide for a judicial action to determine whether the person initiating the foreclosure process is indeed authorized.' *Gomes*[, *supra*,] 192 Cal.App.4th [at p.] 1155 . . . ." (*Diunugala v. JPMorgan Chase Bank, N.A.* (2013 S.D.Cal., Oct. 3, 2013, No. 12cv2106-WQH-NLS) 2013 U.S. Dist. Lexis 144326 at p. *20.)

The position taken by the majority of Ninth Circuit district courts is that "plaintiffs lack standing to challenge noncompliance with a PSA in securitization unless they are parties to the PSA or third party beneficiaries of the PSA. *See Aniel v. GMAC Mortg., LLC, 2012 U.S. Dist. LEXIS 157792 . . . at \*4 (N.D. Cal. Nov. 2, 2012)* (collecting cases); *Almutarreb v. Bank of New York Trust Co., N.A., 2012 U.S. Dist. LEXIS 137202 . . . at \*2 (N.D. Cal. Sept. 24, 2012) . . . ."* (*Baldoza v. Bank of America, N.A.* (2013 N.D.Cal., Mar. 12, 2013, No. C-12-05966 JCS) 2013 U.S. Dist. Lexis 34323 at p. \*26; see *Bowe v. American Mortgage Network, Inc.* (2013 C.D.Cal., Mar. 28, 2013, No. CV 11-08381 DDP (SHx)) 2013 U.S. Dist. Lexis 46835 at p. \*7, fn. 2.) "Plaintiff does not have standing to challenge the securitization of his loan because he is not a party to the Pooling Service Agreement . . . ." (*Halajian*, *supra*, 2013 U.S. Dist. Lexis 20341 at p. \*21.)

Plaintiffs lack standing even if their loans or deeds of trust are transferred to the securitization trust after the specified closing date and despite the plaintiffs' arguments that the assignments are void. (*Ramirez v. Kings Mortgage Services, Inc.* (2012 E.D.Cal., Nov. 8, 2012, No. 1:12-cv-01109-AWI-SKO) 2012 U.S. Dist. Lexis 160583 at pp. \*14-15; *Sami v. Wells Fargo Bank* (2012 N.D.Cal., Mar. 21, 2012, No. C 12-00108 DMR) 2012 U.S. Dist. Lexis 38466 at pp. \*15-16.) Perhaps a court in Illinois put it most succinctly: "We simply do not see how the New York legislature could have intended to allow a debtor in a commercial transaction to invoke the provisions of a trust to which it is a stranger in order to frustrate the collection of the debt." (*Bank of America Nat. Assn. v. Bassman FBT, L.L.C.* (2012) 2012 Ill. App. 2d 110729, \*P38 [981 N.E.2d 1, 13].)

In *Gomes*, *supra*, 192 Cal.App.4th 1149, ReconTrust sent the borrower the notice of default, acting as the agent for MERS. (*Id*. at p. 1151.) " 'MERS is a private corporation that administers the MERS System, a national electronic registry that tracks the transfer of ownership interests and servicing rights in mortgage loans. Through the MERS System, MERS becomes the mortgagee of record for participating members

11

through assignment of the members' interests to MERS. MERS is listed as the grantee in the official records maintained at county register of deeds offices. The lenders retain the promissory notes, as well as the servicing rights to the mortgages. The lenders can then sell these interests to investors without having to record the transaction in the public record. MERS is compensated for its services through fees charged to participating MERS members.' [Citation.]" (*Ibid*.) The borrower alleged that he " '[did] not know the identity of the Note's beneficial owner' " (*id*. at p. 1152) and that MERS did not have authority to initiate the foreclosure (*ibid*.). The trial court sustained a demurrer to the complaint without leave to amend. (*Id*. at p. 1153.)

Affirming, the Court of Appeal refused to interfere in the delicately balanced and comprehensive nonjudicial foreclosure scheme established by the Legislature. (Civ. Code, § 2924 et seq.) The court concluded, "Because California's nonjudicial foreclosure statute is unambiguously silent on any right to bring the type of action identified by Gomes, there is no basis for the courts to create such a right." (*Gomes*, *supra*, 192 Cal.App.4th at p. 1156.)

Plaintiff argues that *Gomes* is distinguishable because, unlike Gomes, whose allegations were based on sheer speculation, she has identified the true beneficiary and has provided the factual basis lacking in *Gomes*—an audit report. Defendants correctly point out that plaintiff has not cited to any audit report in the record. Her argument simply ignores the central holding of *Gomes*: "[N]owhere does the statute provide for a judicial action to determine whether the person initiating the foreclosure process is indeed authorized, and we see no ground for implying such an action." (*Gomes*, *supra*, 192 Cal.App.4th at p. 1155.)

But more fundamentally, plaintiff blurs deficiencies in the securitization process with alleged defects during the foreclosure on the deed of trust. Whether or not her loan was effectively securitized is immaterial to whether the proper parties foreclosed on her loan. Simply put, the attempted or intended securitization of her loan did not deprive the

beneficiary of the deed of trust of the legal right to foreclose. Chase, the original lender and beneficiary, assigned its beneficial interest to Chase Home Finance LLC. Chase Home Finance LLC then substituted California Reconveyance Company as trustee, and California Reconveyance Company issued the notice of default, the notice of trustee's sale, and the trust deed after the property was sold. "The trustee, mortgagee, or beneficiary, or any of their authorized agents" are authorized by Civil Code section 2924 to foreclose. Thus, California Reconveyance Company, as trustee, was authorized to foreclose, and as *Gomes* teaches, it need not have secured the approval of any certificate holders.[3]

A pattern emerges. In *Herrera*, *supra*, 205 Cal.App.4th 1495, the borrower again alleged a defect in MERS's assignment of the deed of trust, arguing that the successors and assignees of the original lender did not have an agency agreement with MERS. And again the borrowers, like plaintiff, did not claim that the lender committed misconduct by initiating foreclosure proceedings, nor did they contend they were not in default. "Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor. As to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note." (*Id*. at p. 1507.)

The Fourth Appellate District reiterated the same general rule in *Jenkins*, *supra*, 216 Cal.App.4th 497, 511: "California courts have refused to delay the nonjudicial foreclosure process by allowing trustor-debtors to pursue preemptive judicial actions to challenge the right, power, and authority of a foreclosing 'beneficiary' or beneficiary's 'agent' to initiate and pursue foreclosure." Jenkins, like each of the distressed homeowners in all of these cases, alleged an improper transfer of the promissory note

---

[3] Since plaintiff alleges her loan was never transferred into the securitization trust, we do not understand which "certificate holders" she alleges ought to have been consulted.

13

during the securitization process. But the court noted that Jenkins's obligations under the promissory note remained unchanged, even if the subsequent assignments were invalid. She lacked standing to challenge or enforce any of the agreements reached during the securitization process, including the investment trust's PSA. In the court's view, there might have been a true victim lurking, but it was not the borrower who had defaulted on her obligation and sought to create a controversy to which she was not a party. (*Id*. at p. 515.)

Here, too, it is undisputed that plaintiff is in default and she seeks to undo a nonjudicial foreclosure sale based on problems with the securitization of her deed of trust. Like her counterparts in the above cases, she alleges that the assignment of her deed of trust was fraudulent. She also alleges that her loan was never actually securitized because it was not transferred into the trust before it closed. She too contends she has stated sufficient facts to support a cause of action for wrongful disclosure.

A recent case from the Fifth Appellate District appears at odds with *Maynard*, *Gomes*, and the litany of cases cited above and supports plaintiff's position. In *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079 (*Glaski*), the court held that the plaintiff stated a cause of action for wrongful foreclosure under the theory that the entity invoking the power of sale was not the holder of the deed of trust. The problem was an ill-fated glitch in the securitization of the loan and a violation of New York law. Simply put, the plaintiff's loan was not transferred into the securitized trust before it closed, and therefore, the transfers were ineffective. (*Glaski*, at p. 1082.) The court wrote, "Transfers that violate the terms of the trust instrument are void under New York trust law, and borrowers have standing to challenge void assignments of their loans even though they are not a party to, or a third party beneficiary of, the assignment agreement." (*Id*. at p. 1083.)

*Glaski*, however, has not been well received by federal courts. "Every court in [the Northern] district that has evaluated *Glaski* has found it is unpersuasive and not

14

binding authority.  See *Subramani v. Wells Fargo Bank N.A., No. C 13-1605, 2013 U.S. Dist. LEXIS 156556, 2013 WL 5913789, at \*3 (N.D. Cal. Oct. 31, 2013)* (Judge Samuel Conti); *Dahnken v. Wells Fargo Bank, N.A., No. C 13-2838, 2013 U.S. Dist. LEXIS 160686, 2013 WL 5979356, at \*2 (N.D. Cal. Nov. 8, 2013)* (Judge Phyllis J. Hamilton); *Maxwell v. Deutsche Bank Nat'l Trust Co., No. C 13-3957, 2013 U.S. Dist. LEXIS 164707, 2013 WL 6072109, at \*2 (N.D. Cal. Nov. 18, 2013)* (Judge William H. Orrick Jr.); *Apostol v. Citimortgage, Inc., No. C 13-1983, 2013 U.S. Dist. LEXIS 167308, 2013 WL 6140528, at 6 (N.D. Cal. Nov. 21, 2013)* (Judge William H. Orrick Jr.)." (*Zapata v. Wells Fargo Bank, N.A.* (N.D.Cal., Dec. 10, 2013, No. C 13-04288 WHA) 2013 U.S. Dist. Lexis 173187 at p. \*5.)  Federal courts continue to reject the reasoning in *Glaski*.  (*Haddad v. Bank of America, N.A.* (S.D.Cal., Jan. 8, 2014, No. 12cv3010-WQH-JMA) 2014 U.S. Dist. Lexis 2205; *Rivac v. Ndex West LLC* (N.D.Cal., Dec. 17, 2013, No. C 13-1417 PJH) 2013 U.S. Dist. Lexis 177073; *Sepehry-Fard v. Dept. Stores Nat. Bank* (N.D.Cal., Dec. 13, 2013, No. 13-cv-03131-WHO) 2013 U.S. Dist. Lexis 175320.) We can find no state or federal cases to support the *Glaski* analysis and will follow the federal lead in rejecting this minority holding.

Even if we were to accept *Glaski*'s standing analysis, there is another obstacle to plaintiff's claim.

### 2.      *Prejudice*

In *Dick v. American Home Mortgage Servicing, Inc.* (E.D.Cal., Sept. 18, 2013, No. 2:13-00201 WBS CKD) 2013 U.S. Dist. Lexis 133755 (*Dick*), the court did not attempt to distinguish or explain *Glaski* because it found the wrongful foreclosure claim failed for lack of prejudice.  The court explained:  "California courts find a lack of prejudice when a borrower is in default and cannot show that the allegedly improper assignment interfered with the borrower's ability to pay or that the original lender would not have foreclosed under the circumstances.  See *Siliga*[*, supra,*] *219 Cal. App. 4th 75* . . . ('The assignment of the deed of trust and the note did not change [plaintiffs']

15

obligations under the note, and there is no reason to believe that . . . the original lender would have refrained from foreclosure in these circumstances.'); *Herrera*[*, supra*], *205 Cal. App. 4th* [*at p.*] *1508* . . . (finding no prejudice from assignment of loan where borrowers defaulted on the loan and failed to tender and cure default); *Fontenot* [*v. Wells Fargo Bank, N.A.(2011)*] *198 Cal. App. 4th* [*256,*] *272* [*(Fontenot)*] (finding no prejudice where borrower was in default and did not allege that transfer of note interfered with borrower's ability to pay).

"Plaintiffs acknowledge they were in default of their loan. [Citation.] They do not allege that the allegedly improper transfer interfered with their ability to pay their note, or that the original lender would have refrained from foreclosure under the circumstances. The allegedly improper 'assignment merely substituted one creditor for another, without changing [plaintiffs'] obligations under the note.' *Fontenot,* [*supra,*] *198 Cal. App 4th at* [*p.*] *272*. Plaintiffs do not allege they could have met these obligations, and thus any defects in the foreclosure were not prejudicial to plaintiffs. Accordingly, the court will grant the moving defendants' motion to dismiss plaintiffs' claim for wrongful foreclosure." (*Dick*, *supra*, 2013 U.S. Dist. Lexis 133755 at pp. *8-*9.)

We agree with the court in *Dick* that whether a plaintiff homeowner's challenge is to defects arising in the foreclosure proceedings or during the securitization process, she must demonstrate prejudice. In *Fontenot*, *supra*, 198 Cal.App.4th 256, the court explained: "Even if MERS lacked authority to transfer the note, it is difficult to conceive how plaintiff was prejudiced by MERS's purported assignment, and there is no allegation to this effect. Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor. As to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note. Plaintiff effectively concedes she was in default, and she does not allege that the transfer to HSBC interfered in any manner with her payment of the note . . . , nor that the original lender would have refrained from foreclosure under the circumstances

16

presented.  If MERS indeed lacked authority to make the assignment, the true victim was not plaintiff but the original lender, which would have suffered the unauthorized loss of a $1 million promissory note." (*Id*. at p. 272.)

Prejudice is not presumed when there are irregularities in the foreclosure process. (*Herrera*, *supra*, 205 Cal.App.4th at p. 1507.)  Moreover, a plaintiff must allege specific facts showing prejudice even if the assignment of the deed of trust is void.  (*Ibid*.; *Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433, 443.)  The type of prejudice that must be shown is " 'that the foreclosure would have been averted but for [the] alleged deficiencies.'  [Citations.]" (*Albano v. Cal-Western Reconveyance Corp.* (N.D.Cal., Nov. 5, 2012, No. 4:12-cv-4018 KAW) 2012 U.S. Dist. Lexis 159245 at p. *17; see also *Ghuman v. Wells Fargo Bank, N.A.* (E.D.Cal., June 15, 2012, No. 1:12-cv-00902-AWI-BAM) 2012 U.S. Dist. Lexis 83623 at pp. *17-*18.  Thus, the court in *Herrera* stated that if MERS did not have authority to assign the deed and note, the lender, not the plaintiff, was the true victim.  (*Herrera*, *supra*, 205 Cal.App.4th at p. 1508.)

We agree with defendants that plaintiff's cause of action for wrongful foreclosure is akin to those in *Dick*, *Maynard*, *Gomes*, and the litany of cases cited above.  The undisputed evidence showed plaintiff had defaulted on the loan, and she offered no evidence to show that the asserted improprieties in the securitization negatively affected her ability to pay or prevented her from curing her defaults.  While she set forth a long laundry list of so-called damages, she did not allege how the failure to transfer her loan into the trust resulted in her default.  While the beneficiaries may or may not have changed, plaintiff remained liable for her indebtedness and we can discern nothing in the second amended complaint demonstrating that securitization prejudiced her.  We agree with the growing number of courts that have foreclosed borrowers from setting aside a trustee's sale based on alleged irregularities in a securitization process they did not have standing to challenge and that did not ultimately prejudice them.  As these cases clearly

17

demonstrate, plaintiff's wrongful foreclosure cause of action based on problems with securitization is without merit and was properly dismissed without leave to amend.

**Robo-Signing**

Plaintiff also insists that a robo-signed assignment is a void assignment, and a void assignment unravels the entire nonjudicial foreclosure. Although the robo-signing allegation has been launched in many cases, plaintiff fails to cite any authority in which a court set aside a trustee's sale based on a robo-signed document. *Maynard*, *supra*, 2013 U.S. Dist. Lexis 130800 provides an apt example of a case in which the court rejected a very similar allegation.

The Maynards asserted that an assignment was void because Kathleen Everson, the woman who signed it, did not hold the title she claimed on the document. (*Maynard*, *supra*, 2013 U.S. Dist. Lexis 130800 at pp. *22, *24.) They supported their allegation by attaching Everson's LinkedIn.com profile and a Fiscal Times Financial Advisor profile, both of which identified her position with Wells Fargo as something other than the position named on the deed of trust she purportedly signed. (*Id*. at p. *25.) The Maynards argued that utilization of the fabricated assignment constituted intentional misrepresentation and fraudulent concealment. (*Id*. at pp. *22-*28.) The court dismissed all causes of action predicated on the robo-signing allegation. (*Id*. at pp. *27-*28.)

The court explained: "Although Plaintiffs make a valiant effort to bolster their robo-signing allegations with Everson's LINKEDIN.com profile, Everson's profile from the Fiscal Times, and the National Mortgage Settlement Agreement, all miss the mark. Plaintiffs' allegations do not demonstrate that Everson was not authorized in her regular course of duties at Wells Fargo to execute Assignments of Deeds of Trust on behalf of Wells Fargo, nor do Plaintiffs allege that Wells Fargo did not ratify Everson's conduct . . . . More importantly, however, Plaintiffs' robo-signing allegations fail because Plaintiffs lack standing to challenge the alleged fraudulent transfers because they were not parties to the Assignment, nor were they the intended receipts [*sic*] of the

18

Assignment. *See In re MERS Litigation, No. CV 10-1547-PHX-JAT, 2012 U.S. Dist. LEXIS 37134, 2012 WL 932625, at \*3 (D. Ariz. March 20, 2012)* (holding that allegations of robo-signing failed to state a claim because plaintiff lacked standing to challenge assignment). Countless courts have concurred in this result, finding that where a plaintiff alleges that a document is void due to robo-signing, yet does not contest the validity of the underlying debt, and is not a party to the assignment, the plaintiff does not have standing to contest the alleged fraudulent transfer. [Citations.]

"Therefore, because Plaintiffs were not parties to the Assignment, do not contest that they are currently delinquent on the underlying debt obligation, and do not allege that they have been making payments towards this obligation (or to whom), the Court finds Plaintiffs could not have been injured by any alleged robo-signing. Moreover, to the extent that the Assignment was in fact robo-signed, it would be voidable, not void, at the injured party's option." (*Maynard*, *supra*, 2013 U.S. Dist. Lexis 130800 at pp. \*25-\*27.)

*Maynard* is consistent with the prevailing view that plaintiff homeowners lack standing to challenge the validity of robo-signatures. (*Bennett v. Wells Fargo Bank, N.A.* (N.D.Cal., Aug. 9, 2013, No. CV 13-01693-KAW) 2013 U.S. Dist. Lexis 112756 at pp. \*17-\*18.) "The reasoning is that the plaintiff lacks standing to contest the validity of a robo-signature, because his foreclosure was the result of not making payments and entering default, such that he did 'not suffer an injury as a result of the assignment of deed of trust, even if the assignment was fraudulent.' [Citation.]" (*Ibid.*) The circumstances here are analogous to those in *Javaheri v. JPMorgan Chase Bank, N.A.* (C.D.Cal., Aug. 13, 2012, No. 2:10-cv-08185-ODW (FFMx)) 2012 U.S. Dist. Lexis 114510, where the district court accepted as true the proposition that a substitution of trustee was robo-signed but the plaintiff lacked standing to challenge the foreclosure on that basis. The court explained: Plaintiff "Javaheri was not party to this assignment, and did not suffer any injury as a result of the assignment. Instead, the only injury Javaheri alleges is the pending foreclosure on his home, which is the result of his default

19

on his mortgage. The foreclosure would occur regardless of what entity was named as trustee, and so Javaheri suffered no injury as a result of this substitution. [Citation.]" (*Id.* at pp. *16-*17; accord, *Carollo v. Vericrest Financial, Inc.* (N.D.Cal., Sept. 21, 2012, No. 11-CV-4767 YGR) 2012 U.S. Dist. Lexis 137017 at p. *9 [holding homeowner-plaintiff lacks standing to complain about forgery because the "claimed injury is foreclosure. The foreclosure resulted from a default which would have occurred regardless of what entity was named as trustee. Thus, the homeowner-plaintiff does not suffer an injury as a result of the assignment of deed of trust, even if the assignment was fraudulent."].)

The trial court properly sustained defendants' demurrer to the wrongful foreclosure cause of action. Plaintiff makes the rote assertion that if afforded the opportunity, she would provide more facts to coincide with the emerging jurisprudence. Unfortunately, that promise does not meet her burden of disclosing what new facts she can now state to revive her wrongful foreclosure claim. As a result, the trial court did not abuse its discretion by foreclosing additional amendments.

As these cases clearly demonstrate, plaintiff's wrongful foreclosure cause of action is without merit and was properly dismissed.

### III

Plaintiff's remaining two causes of action for declaratory relief and quiet title are fatally deficient on their face.[4] Since the property has been sold, there remain no prospective claims appropriate for declaratory relief. (*Babb v. Superior Court* (1971)

---

[4] Plaintiff argues the viability of a number of phantom causes of action she did not set forth in the second amended complaint, many of which were never alleged in her earlier complaints. " 'Such amended pleading supplants all prior complaints. It alone will be considered by the reviewing court. [Citations.]' " (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 884.) Plaintiff has waived any causes of action she failed to allege in her second amended complaint.

20

3 Cal.3d 841, 848.) Moreover, the substance of her allegations to secure declaratory relief is merely duplicative of her cause of action for wrongful foreclosure. (*California Ins. Guarantee Assn. v. Superior Court* (1991) 231 Cal.App.3d 1617, 1623-1624.)

Plaintiff does not argue the merits of her quiet title cause of action. As defendants contend, it fails as a matter of law because she does not demonstrate paramount title and she has not paid the debt secured. (*Halajian*, *supra*, 2013 U.S. Dist. LEXIS 20341 at p. *27)

Plaintiff offers no new factual allegations to merit an opportunity to further amend her complaint or to demonstrate that the trial court abused its discretion. She has had three opportunities to state a viable claim against these defendants and has fallen far short of the mark.

## DISPOSITION

The judgment is affirmed.


                                                          RAYE          , P. J.


We concur:


          MAURO          , J.


          DUARTE        , J.


21

Filed 8/11/14

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| MARIA MENDOZA, | C071882 |
| Plaintiff and Appellant, | (Super. Ct. No. 39201100267960CUORSTK) |
| v. | |
| JPMORGAN CHASE BANK, N.A. et al., | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Joaquin County, Michael D. Coughlan, J.  Affirmed.

Yesk Law, Michael Yesk, and Megan Dailey for Plaintiff and Appellant.

Bryan Cave, Daniel T. Rockey, and Robert J. Esposito for Defendants and Respondents.

THE COURT:

The opinion in the above-entitled matter filed on July 22, 2014, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

BY THE COURT:

      RAYE      , P. J.

      MAURO      , J.

      DUARTE      , J.