Filed 8/27/13

*CERTIFIED FOR PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| JOHNNY SILIGA et al., | B240531 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC454905) |
| v. |  |
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., et al., |  |
| Defendants and Respondents. |  |

APPEAL from a judgment of the Superior Court of Los Angeles County,

Gregory W. Alarcon, Judge.  Affirmed.

Law Offices of Nick A. Alden and Nick A. Alden for Plaintiffs and Appellants.

Locke Lord, Conrad V. Sison and Daniel A. Solitro for Defendants and

Respondents.

Johnny Siliga and Fa'alagilagi Siliga appeal a judgment dismissing their complaint against Mortgage Electronic Registration Systems, Inc. (MERS), Quality Loan Services Company (QLS) and Deutsche Bank National Trust Company (Deutsche Bank) after the sustaining of a demurrer without leave to amend. The Siligas allege four counts arising from a nonjudicial foreclosure. They challenge MERS's authority to assign the deed of trust and the note to Deutsche Bank and QLS's authority to record a notice of default. They also contend they are entitled to leave to amend their complaint to correct particular defects. We conclude that they have shown no error and will affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Factual Background*

The Siligas executed a deed of trust in June 2004 against real property, their primary residence, located in Carson, California. The deed of trust secured a $280,000 promissory note in favor Accredited Home Lenders, Inc (Accredited). The deed of trust identified the Siligas as "Borrower" and Accredited as "Lender."

The deed of trust stated, "MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.**" It stated further, "The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS," and "Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as

2

nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument."

QLS recorded a notice of default and election to sell under deed of trust on March 24, 2010. The notice of default stated that QLS was acting as agent for the beneficiary. A Corporate Assignment of Deed of Trust was recorded on April 28, 2010, stating that MERS was assigning to Deutsche Bank the deed of trust "[t]ogether with the note or notes therein described or referred to . . . ." Deutsche Bank executed a substitution of trustee in May 2010 naming QLS as the new trustee, and the document was recorded on May 19, 2010. QLS recorded a notice of trustee's sale on August 19, 2010.

The trustee's sale was postponed and apparently has not occurred to this date.

2. *Trial Court Proceedings*

The Siligas filed a complaint in February 2011 and filed a first amended complaint against MERS, QLS and Deutsche Bank in May 2011. They allege in pertinent part that (1) MERS as nominee for the lender had no authority to assign the deed of trust and the note to Deutsche Bank; (2) Deutsche Bank had no authority to commence a nonjudicial foreclosure because it was never validly assigned and did not possess the promissory note; (3) the defendants failed to comply with the statutory requirement of attempting to contact the borrower in person or by telephone to assess the borrower's financial situation and explore options to avoid foreclosure before

recording a notice of default (Civ. Code, § 2923.5, subd. (a)(2)); (4) the notice of trustee's sale was recorded before the expiration of the 90-day waiting period required under former Civil Code section 2923.52, subdivision (a); and (5) QLS failed to timely post a notice of trustee's sale on the property and failed to timely notify them of the sale.

The Siligas plead counts for (1) breach of contract, alleging that QLS breached the deed of trust by recording a notice of default before it was appointed as trustee; (2) violation of statutory duties, alleging that the defendants' acts and omissions set forth above violated numerous statutory requirements; (3) unfair business practices, alleging that the same acts and omissions constituted unlawful or unfair business practices under the unfair competition law (Bus. & Prof. Code, § 17200 et seq.); and (4) quiet title, seeking to invalidate all adverse claims of interest in the property. They filed an ex parte application for a temporary restraining order at the time they filed their first amended complaint. The trial court denied the application.[1]

Deutsche Bank and MERS filed a general demurrer to each count alleged in the first amended complaint. They argued that the Siligas failed to state any valid cause of action because they failed to allege that they had tendered the amount due. They also argued, among other things, that (1) the Siligas' attacks on the defendants' authority to act in connection with the foreclosure were groundless; (2) the declaration in the notice of default satisfied Civil Code section 2923.5, subdivision (a)(2); (3) former Civil Code

---

[1]     We affirmed the denial in an unpublished opinion (*Siliga v. Mortgage Electronic Registration Systems, Inc.* (Feb. 9, 2012, B233000)).

4

section 2923.52 was inapplicable; (4) the Siligas had suffered no injury and therefore lacked standing under the unfair competition law; and (5) the Siligas were not entitled to quiet title. They filed a request for judicial notice of certain recorded documents in support of their demurrer. The Siligas opposed the demurrer and also requested judicial notice of certain documents.[2]

The trial court filed a signed order ruling on the demurrer on July 14, 2011. It stated that the Siligas' first, third and fourth counts and part of their second count were based on the allegation that MERS had no authority to assign the deed of trust to Deutsche Bank. It noted the language in the deed of trust that " 'MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose . . . . ' " Citing *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1157 (*Gomes*), for the proposition that MERS as nominee for the lender has the authority to initiate a nonjudicial foreclosure as stated in the deed of trust, the court concluded that MERS also had the authority to assign the deed of trust. The court therefore sustained the demurrer without leave to amend as to the entire complaint with the exception of that part of the second count alleging the violation of Civil Code section 2923.5.

The order stated further that notwithstanding the sustaining of the demurrer to most of the complaint, the trial court would discuss each count further "to determine

---

[2]  No ruling on the requests for judicial notice appears in the record on appeal.

what the outcome of their pleading *would have been* had that cause of action not been barred." The order then proceeded to discuss each count.

The Siligas filed a request for the dismissal without prejudice of their second count as to the alleged violation of Civil Code section 2923.5. The trial court clerk entered a dismissal on January 25, 2012, as requested. The court entered a signed order on March 27, 2012, dismissing the remainder of the complaint with prejudice in accordance with its ruling on the demurrer.[3] The Siligas timely appealed the judgment.

### *CONTENTIONS*

The Siligas contend (1) MERS had no authority to assign the deed of trust and the note; (2) the provision in the deed of trust granting authority to MERS is unconscionable; (3) the notice of default is invalid because QLS had no authority to record it; (4) they are entitled to leave to amend their complaint to allege damages for breach of contract more specifically; (5) they are entitled to leave to amend their count for unfair business practices; and (6) they have adequately alleged a count for quiet title.

### *DISCUSSION*

1.    *Standard of Review*

A demurrer tests the legal sufficiency of the factual allegations in a complaint. We independently review the sustaining of a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.) We assume

---

[3]    A signed order of dismissal is an appealable judgment. (Code Civ. Proc., §§ 581d., 904.1, subd.(a)(1).)

6

the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) We construe the pleading in a reasonable manner and read the allegations in context. (*Ibid.*) We must affirm the judgment if the sustaining of a general demurrer was proper on any of the grounds stated in the demurrer, regardless of the trial court's stated reasons. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)

It is an abuse of discretion to sustain a demurrer without leave to amend if there is a reasonable probability that the defect can be cured by amendment. (*Schifando v. City of Los Angeles*, *supra*, 31 Cal.4th at p. 1082.) The burden is on the plaintiff to demonstrate how the complaint can be amended to state a valid cause of action. (*Ibid.*) The plaintiff can make that showing for the first time on appeal. (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1386.)

2.     *The Siligas Cannot Maintain a Preemptive Judicial Action Challenging the Defendants' Authority to Foreclose*

"California's nonjudicial foreclosure scheme is set forth in Civil Code sections 2924 through 2924k, which 'provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust.' (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830 [30 Cal.Rptr.2d 777] (*Moeller* ).) 'These provisions cover every aspect of exercise of the power of sale contained in a deed of trust.' (*I. E. Associates v. Safeco Title Ins. Co.* (1985) 39 Cal.3d 281, 285 [216 Cal.Rptr. 438, 702 P.2d 596].) 'The purposes of this comprehensive

7

scheme are threefold:  (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser.' (*Moeller*, at p. 830.)  'Because of the exhaustive nature of this scheme, California appellate courts have refused to read any additional requirements into the non-judicial foreclosure statute.' (*Lane v. Vitek Real Estate Industries Group* (E.D.Cal. 2010) 713 F.Supp.2d 1092, 1098; see also *Moeller*, at p. 834 ['It would be inconsistent with the comprehensive and exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another unrelated cure provision into statutory nonjudicial foreclosure proceedings.'].)" (*Gomes*, *supra*, 192 Cal.App.4th at p. 1154.)

California courts have refused to allow trustors to delay the nonjudicial foreclosure process by pursuing preemptive judicial actions challenging the authority of a foreclosing "beneficiary" or beneficiary's "agent." (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 511 (*Jenkins*); *Gomes*, *supra*, 192 Cal.App.4th at pp. 1154-1156 & fn. 5.)  Such an action is "preemptive" if the plaintiff alleges no "specific factual x" for the claim that the foreclosure was not initiated by the correct person.  (*Jenkins*, *supra*, at p. 512.)  A preemptive suit does not seek a remedy for specified misconduct in the nonjudicial foreclosure process, which may provide a basis for a valid cause of action.  Instead, a preemptive suit seeks to create an additional requirement for the foreclosing party, apart from the comprehensive statutory requirements, by requiring the foreclosing party to demonstrate in court that it is

authorized to initiate a foreclosure.  (*Ibid.*)  "[A]llowing a trustor-debtor to pursue such an action, absent a '*specific factual basis* for alleging that the foreclosure was not initiated by the correct party' would unnecessarily 'interject the courts into [the] comprehensive nonjudicial scheme' created by the Legislature, and 'would be inconsistent with the policy behind nonjudicial foreclosure of providing a quick, inexpensive and efficient remedy.  [Citation.]' "  (*Id.* at p. 512; italics in original.)

3.  *The Siligas Fail to Adequately Allege that MERS Lacked Authority to Assign the Deed of Trust and the Note*

The Siligas argue that MERS had no authority to assign the deed of trust and the note essentially for three reasons.  First, they argue that any authority given to MERS by Accredited as the lender lapsed when Accredited went out of business.  Second, they argue that MERS had no authority to assign the note, and an assignment of a deed of trust without an assignment of the note is invalid as a matter of law.  Third, they argue that MERS required Accredited's written authorization to assign the deed of trust and the note in order to satisfy the statute of frauds, and there is no evidence that MERS had such written authorization.

*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 267 (*Fontenot*), explained:  "MERS is a private corporation that administers a national registry of real estate debt interest transactions.  Members of the MERS System assign limited interests in the real property to MERS, which is listed as a grantee in the official records of local governments, but the members retain the promissory notes and mortgage servicing rights.  The notes may thereafter be transferred among members

9

without requiring recordation in the public records. [Citation.] [¶] Ordinarily, the owner of a promissory note secured by a deed of trust is designated as the beneficiary of the deed of trust. [Citation.] Under the MERS System, however, MERS is designated as the beneficiary in deeds of trust, acting as 'nominee' for the lender and granted the authority to exercise legal rights of the lender."

California courts have held that a trustor who agreed under the terms of the deed of trust that MERS, as the lender's nominee, has the authority to exercise all of the rights and interests of the lender, including the right to foreclose, is precluded from maintaining a cause of action based on the allegation that MERS has no authority to exercise those rights. (*Gomes*, *supra*, 192 Cal.App.4th at p. 1157; *Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1505 (*Herrera*).) The deed of trust itself, attached to the Siligas' complaint, establishes as a factual matter that MERS has the authority to exercise all of the rights and interests of the lender.[4] (*Gomes*, *supra*, at p. 1157; *Herrera*, *supra*, at p. 1505.) The authority to exercise all of the rights and interests of the lender necessarily includes the authority to assign the deed of trust. (*Herrera*, *supra*, at p. 1505.)

The Siligas cite Civil Code section 2356, subdivision (a)(2) and (3), which states that an agent's authority terminates upon the death of the principal or the principal's

---

[4]    The facts alleged in the complaint and those judicially noticeable fail to establish that the provision in the deed of trust granting MERS the authority to foreclose is unconscionable. Contrary to the Siligas' argument, this provision does not purport to authorize MERS to initiate a foreclosure in violation of the law, is not "unfairly one-sided" or " ' " 'overly harsh' " ' " (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071), and therefore is not substantively unconscionable.

10

incapacity to contract unless the agent's power is coupled with an interest in the subject of the agency. They argue that MERS's authority was terminated upon Accredited's going out of business and filing for bankruptcy protection. But they do not allege in their complaint that Accredited has gone out of business, dissolved or suffered either death or an incapacity to contract in any manner. Accredited's chapter 11 bankruptcy petition, which we have judicially noticed at the Siligas' request, relates to a reorganization and shows neither the company's death nor an incapacity to contract. The Siligas have not alleged facts showing any lapse in MERS's authority to assign the deed of trust and the note on this basis; nor do they argue, if given the opportunity, that they could do so.

The Siligas also fail to allege facts supporting the conclusion that MERS lacked authority to assign the note. "The extent of MERS's authority as a nominee was defined by its agency agreement with the lender, and whether MERS had the authority to assign the lender's interest in the note must be determined by reference to that agreement. [Citations.] Accordingly, the allegation that MERS was merely a nominee is insufficient to demonstrate that MERS lacked authority to make a valid assignment of the note on behalf of the original lender." (*Fontenot*, *supra*, 198 Cal.App.4th at pp. 270-271.) The Siligas allege that "MERS did not and could not have assigned the Promissory Note to DEUTSCHE BANK," but they allege no specific factual basis for this claim. Absent a specific factual basis, this claim amounts to a preemptive claim seeking to require the foreclosing party to demonstrate in court its authority to initiate

11

a foreclosure. Such a claim is invalid and subject to demurrer.[5] (*Jenkins*, *supra*, 216 Cal.App.4th at pp. 511-513; *Gomes*, *supra*, 192 Cal.App.4th at pp. 1154-1156 & fn. 5.) Similarly, the claim that there is no evidence that MERS had written authorization to assign the deed of trust and the note is merely a challenge to the foreclosing party to prove in court its authority to initiate a foreclosure. This claim fails for the same reason.

4.   *QLS Had the Authority to Record the Notice of Default*

The Siligas contend QLS had no authority to record the notice of default because it was not the trustee at the time. A notice of default may be recorded by a "trustee, mortgagee, or beneficiary, or any of their authorized agents." (Civ. Code, § 2924, subd. (a)(1).) The notice of default stated that QLS recorded the notice of default not as trustee but as agent for the beneficiary. This was proper, and the Siligas have shown no error in this regard.

5.   *The Siligas Fail to Adequately Allege any Prejudice Resulting from an Alleged Irregularity in the Foreclosure Process*

Separate and apart from the foregoing, the Siligas fail to allege any facts showing that they suffered prejudice as a result of any lack of authority of the parties participating in the foreclosure process. The Siligas do not dispute that they are in

---

[5]   We reject the argument that MERS as nominee of the original lender could not assign the note because it did not possess the note. The Siligas allege no factual basis for this argument, and there is no legal basis. (*Fontenot, supra,* 198 Cal.App.4th at pp. 270-271.) Similarly, there is no legal basis for the claim that the foreclosing party must possess the original note. Nothing in the foreclosure statutes imposes such a requirement. (*Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433, 440.)

default under the note. The assignment of the deed of trust and the note did not change the Siligas' obligations under the note, and there is no reason to believe that Accredited as the original lender would have refrained from foreclosure in these circumstances. Absent any prejudice, the Siligas have no standing to complain about any alleged lack of authority or defective assignment. (*Herrera*, *supra*, 205 Cal.App.4th at pp. 1507-1508; *Fontenot*, *supra*, 198 Cal.App.4th at p. 272.)

6. *The Siligas Have Shown No Prejudicial Error as to the Sustaining of the Demurrer to the Counts for Breach of Contract, Unfair Business Practices and Quiet Title*

The Siligas contend they are entitled to leave to amend their counts for breach of contract and unfair business practices and contend they have adequately alleged a count for quiet title. These contentions are based on the discussion in the latter part of the order ruling on the demurrer. The trial court, however, expressly did not rely on that discussion in sustaining the demurrer to those counts without leave to amend. Instead, the order stated that the discussion explained as to each count "what the outcome of their pleading *would have been* had that cause of action not been barred." We conclude that the discussion in the latter part of the order was not part of the trial court's decision and that the Siligas have shown no prejudicial error based on that discussion.

13

### DISPOSITION

The judgment is affirmed.  Defendants shall recover their costs on appeal.

### CERTIFIED FOR PUBLICATION

CROSKEY, J.

WE CONCUR:

KLEIN, P. J.

KITCHING, J.