Filed 10/21/15  Odell v. Bank of America CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MICHAEL ODELL, | B257142 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. GC050977) |
| v. | |
| BANK OF AMERICA, N.A. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Laura A. Matz, Judge.  Affirmed.

Stephen R. Golden & Associates, Stephen R. Golden, Aminah Williams and Elaine D. Etingoff for Plaintiff and Appellant.

Reed Smith, Myles Lanzone and Michael E. Gerst for Defendants and Respondents.

Plaintiff and appellant Michael Odell appeals from the judgment entered after the trial court sustained the demurrer without leave to amend of defendants and respondents Bank of America, N.A. (Bank of America), the Bank of New York Mellon fka the Bank of New York, as Trustee for the Certificate Holders of CWALT, Inc., Alternative Loan Trust 2006-OA10 Mortgage Pass-Through Certificates, Series 2006-OA10 (Bank of New York), and ReconTrust Company, N.A. (ReconTrust).[1]  The sole issue on appeal is whether Odell can bring a preemptive preforeclosure action challenging the authority of Bank of America and Bank of New York to initiate foreclosure proceedings, based on the alleged invalidity of the assignment of his deed of trust.  A similar issue is currently pending before the California Supreme Court in *Yvanova v. New Century Mortgage Corp.* (2014) 226 Cal.App.4th 495 (*Yvanova*), review granted August 27, 2014, S218973.[2]  Based on the current state of the law, we conclude that Odell cannot bring such a preemptive action.  Accordingly, we affirm.

---

[1]     For ease of reference, we will refer to respondents generally as Bank of America unless a specific party is at issue.

[2]     There is one issue being reviewed in *Yvanova*:  "In an action for wrongful foreclosure on a deed of trust securing a home loan, does the borrower have standing to challenge an assignment of the note and deed of trust on the basis of defects allegedly rendering the assignment void?"  (*Yvanova v. New Century Mortgage Corp.* (2014) 331 P.3d 1275; http://appellatecases.courtinfo.ca.gov/, Case No. S218973, site last visited on Oct. 7, 2015.)  In contrast to Odell, the plaintiff in *Yvanova* challenged a foreclosure sale that already had occurred.  However, the California Supreme Court also has granted review in a case that presents the same issue we face here – whether a borrower can seek to prevent foreclosure proceedings based on alleged deficiencies in the assignment of the deed of trust. (*Keshtgar v. U.S. Bank, N.A.* (2014) 226 Cal.App.4th 1201, review granted Oct. 1, 2014, S220012.)  The court granted review and deferred further action in *Keshtgar* pending the decision in *Yvanova*. (*Keshtgar v. U.S. Bank, N.A.* (2014) 334 P.3d 686;  http://appellatecases.courtinfo.ca.gov/, Case No. S220012, site last visited on Oct. 9, 2015.)

## FACTUAL AND PROCEDURAL BACKGROUND[3]

In December 2002, appellant purchased real property on Sierra Madre Boulevard in Pasadena California. On May 24, 2006, appellant refinanced the property, obtaining a loan for $464,000 from United Pacific Mortgage, secured by a deed of trust.

The deed of trust identified appellant as the borrower; United Pacific Mortgage as the lender and Equity Title as the trustee. It identified Mortgage Electronic Registration Systems, Inc. (MERS)[4] as the beneficiary, "a separate corporation that is acting solely as a nominee" for the lender and the lender's "successors and assigns." The deed of trust further stated that "Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the

---

[3]     The facts are taken from the allegations of the third amended complaint, which we assume to be true. (*Wolkowitz v. Redland Ins. Co.* (2003) 112 Cal.App.4th 154, 161.)

[4]     "'MERS is a private corporation that administers the MERS System, a national electronic registry that tracks the transfer of ownership interests and servicing rights in mortgage loans. Through the MERS System, MERS becomes the mortgagee of record for participating members through assignment of the members' interests to MERS. MERS is listed as the grantee in the official records maintained at county register of deeds offices. The lenders retain the promissory notes, as well as the servicing rights to the mortgages. The lenders can then sell these interests to investors without having to record the transaction in the public record. MERS is compensated for its services through fees charged to participating MERS members.' [Citation.] 'A side effect of the MERS system is that a transfer of an interest in a mortgage loan between two MERS members is unknown to those outside the MERS system.' [Citation.]" (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1151 (*Gomes*).)

right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument." In addition, the deed of trust provided that "The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower."

In 2009, appellant experienced financial hardship as a result of the "faltering economy and associated housing market collapse." Appellant's "last accepted mortgage payment was in or about June 2009."

In August 2009, appellant applied for a loan modification with Bank of America. Appellant alleged that he "complied with all of the requirements imposed upon him" by Bank of America. When Bank of America offered appellant a loan modification trial period plan, appellant declined, on the grounds that the payments "were greater [than] and unrepresentative of the prior quoted amounts" and that Bank of America "would not reveal the final terms of the loan modification." Appellant again sought a loan modification from Bank of America in December 2010 and in September 2011, but his applications were denied.

On November 3, 2011, MERS executed an assignment of the deed of trust to the Bank of New York. It is this assignment that appellant contends is invalid.

On November 15, 2011, ReconTrust issued a notice of default indicating that appellant was $86,484.43 in arrears. In December 2011, the notice of default was rescinded and the Bank of New York substituted ReconTrust as trustee. Shortly thereafter, ReconTrust issued and recorded a new notice of default, indicating that appellant was $91,226.17 in arrears. In March 2012, ReconTrust filed a notice of trustee's sale.

Appellant filed a complaint in February 2013 challenging the assignment of the deed of trust to the Bank of New York and the threatened foreclosure.[5]  After Bank of America demurred to the complaint, appellant filed a first amended complaint.[6]  Bank of America successfully demurred to appellant's first and second amended complaints.

The third amended complaint (the operative complaint) alleged:  (1) lack of standing; (2) violation of Business and Professions Code section 17200, et seq.; (3) breach of contract; (4) declaratory relief (Code Civ. Proc., § 1060, et seq.); and (5) quiet title.  The only cause of action at issue in this appeal is the lack of standing claim, asserted against all respondents.[7]  Bank of America demurred and requested that the trial court take judicial notice of documents in support of the demurrer.

The trial court granted in part the request for judicial notice, taking judicial notice that the documents were recorded and the dates they were recorded and taking judicial notice of the contents, "not for the truth of the matters asserted, but

---

[5]  The complaint alleged 11 causes of action:  (1) lack of standing under Civil Code section 2924, subdivision (a)(6); (2) violation of Civil Code section 2924.17; (3) declaratory relief; (4) violation of Business and Professions Code section 17200, et seq.; (5) breach of contract; (6) breach of the implied covenant of good faith and fair dealing; (7) violation of Civil Code section 2923.5; (8) quiet title; (9) unjust enrichment; (10) accounting; and (11) injunctive relief.

[6]  Appellant alleged eight causes of action:  (1) lack of standing; (2) wrongful foreclosure; (3) unfair, fraudulent business practice; (4) breach of contract; (5) negligence; (6) cancellation of instrument; (7) declaratory relief; and (8) quiet title.

[7]  Appellant's brief addresses only his cause of action for lack of standing.  He therefore has forfeited any challenge to the trial court's order regarding his other causes of action. (See *Jones v. Jacobson* (2011) 195 Cal.App.4th 1, 19, fn. 12 ["[I]ssues and arguments not addressed in the briefs on appeal are deemed forfeited.  [Citations.]"].)

to the extent that the contents provide notice and/or are consistent with statutory requirements and for the legal effect of the operative language." The court sustained Bank of America's demurrer without leave to amend as to all causes of action. The court therefore dismissed appellant's action with prejudice as to all respondents and entered judgment in favor of respondents. Appellant timely appealed.

## DISCUSSION

"In reviewing an order sustaining a demurrer, we independently evaluate whether the operative complaint states facts sufficient to state a cause of action. [Citation.] We accept as true all facts alleged in the complaint [citation], except when they are contradicted by exhibits attached to the complaint [citations] or matters subject to judicial notice [citation]." (*Alborzian v. JPMorgan Chase Bank, N.A.* (2015) 235 Cal.App.4th 29, 34.) "When a demurrer is sustained without leave to amend, 'we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]' [Citation.]" (*Kan v. Guild Mortgage Co.* (2014) 230 Cal.App.4th 736, 740-741 (*Kan*).) "'[S]uch a showing can be made for the first time to the reviewing court . . . .' [Citation.]" (*Gomes, supra,* 192 Cal.App.4th at pp. 1153-1154.)

Appellant contends that the trial court erred in sustaining the demurrer as to his cause of action for lack of standing. The lack of standing cause of action is

6

based on appellant's challenge to the securitization of his deed of trust.[8] The complaint alleged the following. The deed of trust was assigned to the Alternative Loan Trust 2006-OA10 on November 3, 2011, but the pooling and servicing agreement of the trust required any assignment of a deed of trust to occur before the trust closing date of June 30, 2006. The trust was formed under the laws of the State of New York, "which invalidates purported transfers" that violate the trust's pooling and servicing agreements. The transfer of appellant's deed of trust accordingly was void. Because "the beneficial interest of the trust was not legally transferred into the securitization trust," Bank of America and Bank of New York did not receive a valid assignment and therefore had no interest in the deed of trust.

Appellant relies on *Glaski*, which held that "a borrower can challenge an assignment of his or her note and deed of trust if the defect asserted would *void* the assignment. [Citation.]" (*Glaski, supra*, 218 Cal.App.4th at p. 1095.) "The argument that a defendant lacks standing to foreclose because of an improper securitization process has recently become particularly popular." (*Kan, supra*, 230 Cal.App.4th at p. 741.)

In *Glaski*, the plaintiff challenged the foreclosure sale of his property. As pertinent here, he argued that his note and loan were not transferred to a securitized trust prior to its closing date; the assignment of his deed of trust did not occur before the closing date; the transfer to the trust attempted by the assignment of the deed of trust "occurred long after the trust was closed;" and the attempted

---

[8]  "Mortgage-backed securities are created through a complex process known as 'securitization.' [Citation.] In simplified terms, 'securitization' is the process where (1) many loans are bundled together and transferred to a passive entity, such as a trust, and (2) the trust holds the loans and issues investment securities that are repaid from the mortgage payments made on the loans. [Citation.]" (*Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, 1082, fn. 1 (*Glaski*).)

assignment was ineffective because the securitized trust "could not have accepted the . . . deed of trust after the closing date because of the pooling and servicing agreement and the statutory requirements applicable to a real estate mortgage investment conduit . . . trust." (*Glaski, supra*, 218 Cal.App.4th at p. 1093.)

Glaski noted that "[w]hen a borrower asserts an assignment was ineffective, a question often arises about the borrower's standing to challenge the assignment of the loan (note and deed of trust)—an assignment to which the borrower is not a party. [Citations.]" (*Glaski, supra*, 218 Cal.App.4th at p. 1094.) Nonetheless, the court "found that a borrower has standing to contest a defective assignment to a real estate investment trust, explicitly rejecting the view that the borrower's status as a nonparty or non-third party beneficiary to an assignment agreement prevents the borrower from challenging the transfer. [Citation.]" (*Kan, supra*, 230 Cal.App.4th at p. 743.)

The situation we face is more similar to *Kan*, in which the plaintiff relied on *Glaski* to argue that the transfer of his promissory notes to a securitized trust did not comply with the terms of the trust. (See *Kan, supra*, 230 Cal.App.4th at p. 739.) The court declined to follow *Glaski*, pointing out that "the primary claim at issue in *Glaski* was one for wrongful foreclosure. In contrast, Kan seeks to assert a preforeclosure cause of action for quiet title." (*Id.* at p. 743.)

Most courts have held that a borrower cannot file a preforeclosure preemptive action to challenge the authority of an entity to initiate foreclosure. For example, in *Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497 (*Jenkins*), the plaintiff homeowner filed suit before a foreclosure sale, "based on her theory her loan was pooled with other home loans in a securitized investment trust . . . without proper compliance with the investment trust's pooling and servicing agreement." (*Id.* at p. 505.) Similar to the argument made by appellant

8

here, the *Jenkins* plaintiff alleged "the failure to comply with the pooling and servicing agreement extinguished the security interest created by her execution of the deed of trust in 2007 and, therefore, Defendants now have no secured interest to foreclose upon." (*Ibid.*)

*Jenkins* discussed the statutory scheme setting forth California's nonjudicial foreclosure scheme and concluded that, "due to the '"exhaustive nature of this scheme, California appellate courts have refused to read any additional requirements into the non-judicial foreclosure statute." [Citations.]' [Citation.] As one appellate court stated: 'It would be inconsistent with the comprehensive and exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another unrelated cure provision into statutory nonjudicial foreclosure proceedings.' [Citation.]" (*Jenkins, supra*, 216 Cal.App.4th at p. 510; see also *Gomes, supra,* 192 Cal.App.4th at p. 1155 ["The recognition of the right to bring a lawsuit to determine a nominee's authorization to proceed with foreclosure on behalf of the noteholder would fundamentally undermine the nonjudicial nature of the process and introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures."]; *Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 84 [rejecting the plaintiff homeowners' challenge to the authority of MERS to assign the deed of trust and note to a bank as "a preemptive claim seeking to require the foreclosing party to demonstrate in court its authority to initiate a foreclosure"] (*Siliga*).)

Appellant contends that, unlike in *Gomes* and *Siliga*, he does not challenge the general authority of MERS to initiate foreclosure. Instead, making the same argument as the plaintiff in *Glaski*, he contends that in his particular case, there were defects in the securitization process that rendered the transfer void as to

9

respondents' right to initiate foreclosure. (See *Glaski, supra*, 218 Cal.App.4th at pp. 1093, 1095-1096.) We find *Kan* persuasive in distinguishing *Glaski*.

As *Kan* reasoned, the primary claim in *Glaski* was for wrongful foreclosure. (*Kan, supra*, 230 Cal.App.4th at p. 743.) Unlike the challenge to a completed foreclosure sale in *Glaski*, appellant has brought a preforeclosure action to challenge the authority of respondents to initiate foreclosure. *Glaski* did not address the holding of *Gomes, supra*, that "a preforeclosure preemptive action is not authorized by the nonjudicial foreclosure statutes because it creates an additional requirement that a foreclosing entity first demonstrate in court that it is entitled to foreclose. [Citation.]" (*Ibid.*) Nor did *Glaski* address *Jenkins*, which addressed allegations identical to appellant's. "As explained in *Jenkins* (a case not discussed in the *Glaski* opinion), allowing a plaintiff to assert a preemptive action like the one [appellant] proposes 'would result in the impermissible interjection of the courts into a nonjudicial scheme enacted by the California Legislature.' [Citation.]" (*Ibid.*) *Glaski* therefore is distinguishable. Pursuant to *Kan*, *Gomes*, and *Jenkins*, we conclude that appellant may not bring a preforeclosure preemptive action challenging the validity of the assignment of the deed of trust.

Even if appellant brought a valid cause of action, he has not shown any prejudice. As in *Kan*, appellant does not dispute that the deed of trust permitted its assignment. (See *Kan, supra*, 230 Cal.App.4th at p. 745.) "Nor does [appellant] dispute that the subject loan is in default." (*Ibid.*) The foreclosure never took place, appellant's last mortgage payment was in 2009, and he presumably remains in possession of the property. (See *Siliga, supra*, 219 Cal.App.4th at p. 85 [plaintiffs "[did] not dispute that they are in default under the note," "[t]he assignment of the deed of trust and the note did not change [their] obligations under the note," and "there [was] no reason to believe that . . . the original lender

10

would have refrained from foreclosure in these circumstances."].)  "Absent any prejudice, [appellant has] no standing to complain about any alleged lack of authority or defective assignment.  [Citations.]"  (*Ibid.*; see also *Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1508 [assuming there were procedural defects in MERS' assignment of the deed of trust to a bank, plaintiffs did not show any prejudice where they borrowed $318,500, defaulted on the loan, and did not tender payment and cure the default] (*Herrera*).)

Appellant further contends that cases such as *Gomes*, *Siliga*, and *Jenkins* are contrary to the legislative intent set forth in the California Homeowner Bill of Rights.[9]  We disagree with appellant for several reasons.  First, "[t]he California Homeowner Bill of Rights became effective on January 1, 2013.  [Citation.]" (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 86, fn. 14.) The events at issue here occurred in 2011 and 2012.

Moreover, *Jenkins* was decided after the effective date of the Homeowner Bill of Rights, and *Gomes* and *Jenkins* have been cited with approval repeatedly. (See, e.g., *Kan, supra*, 230 Cal.App.4th at p. 743; *Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1491-1493 [discussing *Jenkins* and concluding that "[a]llowing a judicial action to prevent a nonjudicial foreclosure without specific factual allegations showing a lack of authority 'would unnecessarily "interject the courts into [the] comprehensive nonjudicial scheme" created by the Legislature, and "would be inconsistent with the policy behind nonjudicial

---

[9]  The legislation added or amended Civil Code sections 2920.5, 2923.4–2923.7, 2924, 2924.9–2924.12, 2924.15, 2924.17–2924.20.  (See *Valbuena v. Ocwen Loan Servicing, LLC* (2015) 237 Cal.App.4th 1267, 1272.)  "Although the Legislature did not give the legislation a title, the Governor in his signing statement, and courts and commentators, have referred to the legislation as the 'California Homeowner Bill of Rights.'  [Citations.]"  (*Monterossa v. Superior Court* (2015) 237 Cal.App.4th 747, 749, fn. 1.)

foreclosure of providing a quick, inexpensive and efficient remedy. [Citation.]" [Citation.]' [Citations.]"]; *Herrera*, *supra*, 205 Cal.App.4th at pp. 1503-1505 [discussing *Gomes* and rejecting the argument that MERS lacked authority to assign the deed of trust because plaintiffs did not provide any specific facts establishing a defect in the assignment of the deed of trust]; *Robinson v. Countrywide Home Loans, Inc.* (2011) 199 Cal.App.4th 42, 46 ["We agree with the *Gomes* court that the statutory scheme ([Civ. Code,] §§ 2924–2924k) does not provide for a preemptive suit challenging standing."].)

Appellant also relies on the following statement in *Cockerell v. Title Ins. & Trust Co.* (1954) 42 Cal.2d 284: "In an action by an assignee to enforce an assigned right, the evidence must not only be sufficient to establish the fact of assignment when that fact is in issue [citation] but the measure of sufficiency requires that the evidence of assignment be clear and positive to protect an obligor from any further claim by the primary obligee." (*Id.* at p. 292.) He contends that *Cockerell* means the beneficiary has the burden to establish standing to foreclose in order to protect the borrower from a different party subsequently claiming rights under the note and bringing suit against the borrower. *Cockerell* is inapposite. The issue there was not the right of the obligor to challenge the validity of the assignment. Rather, the plaintiffs in *Cockerell* were asserting their rights as assignees of property against another alleged assignee. (See *id.* at p. 286.) Thus, the statement quoted by appellant was preceded by the statement that "[t]he burden of proving an assignment falls upon the party asserting rights thereunder [citations]." (*Id.* at p. 292.)

Appellant cites Civil Code section 2924.17, subdivision (b), which states: "Before recording or filing any of the documents described in subdivision (a), a mortgage servicer shall ensure that it has reviewed competent and reliable evidence

12

to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information." He argues that the statute establishes the foreclosing entity's duty to establish its right to foreclose. The statute does not support appellant's argument that he has the right to challenge an assignment of the deed of trust.

Appellant does not dispute the language in the deed of trust giving MERS "the right to foreclose and sell the Property." Nor does he challenge the language providing that the note and the deed of trust "can be sold one or more times without prior notice to Borrower." He does not dispute that he has defaulted on the loan. Appellant therefore has not shown that Bank of America has failed to "review[] competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information." (Civ. Code, § 2924.17, subd. (b).)

For the foregoing reasons, we affirm the trial court order sustaining the demurrer.

//
//
//
//
//
//
//
//
//
//

**DISPOSITION**

The judgment is affirmed. The parties shall bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.


We concur:


EPSTEIN, P. J.


MANELLA, J.


14