Filed 11/6/15  Cleek v.Greenpoint Mortgage Funding CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DENNIS CLEEK, | |
| Plaintiff and Appellant, | G050654 |
| v. | (Super. Ct. No. 30-2013-00672858) |
| GREENPOINT MORTGAGE FUNDING, INC., et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Robert D. Monarch, Judge.  (Retired Judge of the Orange Super. Ct. assigned by the Chief Jusitce pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Rodriguez Law Group, Patricia Rodriguez and George M. Hill for Plaintiff and Appellant.

Bryan Cave, Stuart W. Price, and Sarah Samuelson for Defendants and Respondents Bank of America N.A., Federal National Mortgage Association, and Mortgage Electronic Registration Systems, Inc.

Doll Amir & Eley, Hunter R. Eley and William H. Edmonson for Defendant and Respondent GreenPoint Mortgage Funding, Inc.

\*　　　\*　　　\*

Plaintiff Dennis Cleek filed this lawsuit against GreenPoint Mortgage Funding, Inc. (GreenPoint); Bank of America, N.A. (Bank of America); Seterus, Inc. (Seterus); Federal National Mortgage Association (Fannie Mae); and Mortage Electronic Registration Systems, Inc. (MERS), for unlawful foreclosure and related causes of action.[1]  Plaintiff's complaint sums itself up as follows:  "The gravamen of Plaintiff's complaint is that Defendants are attempting to foreclose without any legal authority or standing to do so . . . ."  In particular, plaintiff contends that any assignments of the note and deed of trust associated with his home mortgage did not comport with the terms of the pooling and service agreement (PSA) governing the securitization trust to which his mortgage was allegedly sold.  Plaintiff thus challenges the authority of respondents to initiate foreclosure proceedings.  The court sustained a demurrer without leave to amend. We conclude plaintiff has no standing to challenge assignments of his note and deed of trust and thus affirm.

---

[1]　　Seterus is not a party in the present appeal, but is a party in the companion appeal decided concurrently with this appeal.  (*Cleek v. Seterus* (Oct. 6, 2015, G050234) [nonpub. opn.].)

2

FACTS

Plaintiff's first amended complaint (FAC) alleged the following:[2]

In January 2006, plaintiff refinanced his residence through GreenPoint, executing a promissory note and deed of trust. MERS represented that Bank of America was the servicer of the loan, and Fannie Mae the investor. In August 2012, MERS assigned the deed of trust to Bank of America. In October 2012, Bank of America assigned the deed of trust to Fannie Mae. In November 2012, plaintiff was informed that Seterus was the new loan servicer. Plaintiff alleged on information and belief that his note was "sold, transferred and securitized into a Trust." The complaint states "[t]here currently is no Notice of Default or Notice of Trustee Sale recorded or on file that has any relationship to the subject property or the Plaintiffs."[3]

Nonetheless, plaintiff alleged "the following deficiencies exist, in the 'True Sale'[4] and securitization process as to this Deed of Trust which renders invalid any security interest in the Plaintiff's mortgage, including, but not limited to: [¶] a. The splitting or separation of title, ownership and interest in Plaintiff's Note and Deed of Trust. [¶] b. When the loan was sold to each intervening entity, there were no Assignments of the Deed of Trust to or from any intervening entity at the time of the sale.

---

[2] Plaintiff also filed a second amended complaint. On appeal, however, he challenges only the ruling sustaining without leave to amend the demurrer to the wrongful foreclosure cause of action in his first amended complaint.

[3] Presumably plaintiff is in default under the loan, and presumably foreclosure has at least been threatened — why file a lawsuit challenging the foreclosure process otherwise? However, there are no allegations in the complaint addressing plaintiff's payment status or what defendants have done to threaten foreclosure.

[4] Plaintiff later explains that a "true sale" is a prerequisite of securitizing a mortgage, and it involves a sale from the originator to the sponsor of the trust, and then a second sale from the sponsor to the depositor of the trust.

Therefore, 'True Sales' could not and did not occur.  [¶]  c.  The failure to properly endorse, assign and transfer the beneficial interest in Plaintiffs' Note together with the Deed of Trust; [¶]  d.  The failure to transfer the note and Deed of Trust into the securitized trust by its closing date."

Plaintiff alleged five causes of action in his FAC:  wrongful foreclosure; violation of Civil Code section 2924, subdivision (a)(6); violation of Business and Professions Code; breach of the implied covenant of good faith and fair dealing; and violation of Real Estate Settlement Procedures Act (RESPA).  Bank of America, Fannie Mae, and MERS demurred.  The court sustained the demurrers to the first two causes of action without leave to amend.  The court sustained the demurrers with regard to the third, fourth, and fifth causes of action with leave to amend.  After plaintiff amended, the court sustained another demurrer, this time without leave to amend.  Plaintiff timely appealed from the judgment of dismissal.  On appeal, plaintiff challenges only the court's ruling regarding the demurrer to the FAC as it pertains to the wrongful foreclosure cause of action.

DISCUSSION

Plaintiff's appeal boils down to a single issue:  whether a borrower on a home loan may challenge a securitized trust's ownership by attacking intervening assignments of the note and deed of trust.  We conclude he may not.

"We independently review the ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action.  [Citation.]  We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and matters of which judicial notice has been taken.  [Citation.]  We construe the pleading in a reasonable manner and read the allegations in context.  [Citation.]  We affirm the judgment if it is correct on any ground

4

stated in the demurrer, regardless of the trial court's stated reasons." (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 111.)

From a steady line of recent cases in this state, the rule has emerged that a homeowner generally may not challenge a nonjudicial foreclosure on the basis that the wrong party is foreclosing without specific facts indicating it is the wrong party, together with prejudice to the homeowner.

The first of this modern line of cases was *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149 (*Gomes*). There, the homeowner defaulted on a home loan with a deed of trust that identified MERS as the beneficiary. (*Id.* at p. 1151.) The notice of default was sent, and a nonjudicial foreclosure process initiated, by parties not on the original deed of trust. (*Id.* at pp. 1151-1152.) The homeowner filed suit, alleging he did not know the identity of the note's beneficial owner, and alleged on information and belief that the parties carrying out the foreclosure process were not acting with the rightful owner's authority. (*Id.* at p. 1152.) The trial court sustained a demurrer. (*Id*. at p. 1153.)

The *Gomes* court affirmed. (*Gomes*, *supra*, 192 Cal.App.4th at p. 1159.) It premised its holding on the nature of California's nonjudicial foreclosure scheme (Civ. Code, §§ 2924-2924k), which provides "'a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust.' [Citation.] 'These provisions cover every aspect of exercise of the power of sale contained in a deed of trust.' [Citation.] 'The purposes of this comprehensive scheme are threefold: (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser.' [Citation.] 'Because of the exhaustive nature of this scheme, California appellate courts have refused to read any additional requirements into the non-judicial foreclosure statute.'" (*Gomes*, at p. 1154.)

Given the exhaustive nature of the system, the court rejected the homeowner's argument that the statutory scheme, by "'necessary implication,'" permits a homeowner to "test whether the person initiating the foreclosure has the authority to do so." (*Gomes*, *supra*, 192 Cal.App.4th at p. 1155.) "[Civil Code s]ection 2924, subdivision (a)(1) states that a 'trustee, mortgagee, or beneficiary, or any of their authorized agents' may initiate the foreclosure process. However, nowhere does the statute provide for a judicial action to determine whether the person initiating the foreclosure process is indeed authorized, and we see no ground for implying such an action. [Citation.] Significantly, '[n]onjudicial foreclosure is less expensive and more quickly concluded than judicial foreclosure, since there is no oversight by a court, "[n]either appraisal nor judicial determination of fair value is required," and the debtor has no postsale right of redemption.' [Citation.] The recognition of the right to bring a lawsuit to determine a nominee's authorization to proceed with foreclosure on behalf of the noteholder would fundamentally undermine the nonjudicial nature of the process and introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures." (*Ibid.*)

Despite this apparently inflexible rule, the *Gomes* court distinguished three similar federal district court cases where the plaintiffs were permitted to proceed with a cause of action on the basis that, in those cases, the plaintiff identified a "*specific factual basis* for alleging that the foreclosure was not initiated by the correct party." (*Id.* at pp. 1155- 1156.)

This language gave rise to a split of authority concerning whether a plaintiff may ever bring a cause of action to challenge a foreclosing party's authority in the context of a nonjudicial foreclosure, and our Supreme Court has recently granted review of a case on the issue. (*Yvanova v. New Century Mortgage Corp.*, review granted Aug. 27, 2014, S218973.) The only case to hold that a plaintiff can bring such a claim is

6

*Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079 (*Glaski*), which is the case plaintiff relies upon here.

In *Glaski*, the homeowner's note and deed of trust were transferred to a securitization trust, and, as in our case, plaintiff alleged the transfer was defective because "the attempted transfers were made *after the closing date* of the securitized trust holding the pooled mortgages . . . ." (*Glaski*, *supra*, 218 Cal.App.4th at p. 1082.) The *Glaski* court concluded "that a borrower may challenge the securitized trust's chain of ownership by alleging the attempts to transfer the deed of trust to the securitized trust (which was formed under N.Y. law) occurred after the trust's closing date. Transfers that violate the terms of the trust instrument are void under New York trust law, and borrowers have standing to challenge void assignments of their loans even though they are not a party to, or a third party beneficiary of, the assignment agreement." (*Id.* at p. 1083.)

With respect to standing, the *Glaski* court reasoned that while third parties have no standing to challenge an assignment merely *voidable* at the election of the assignor, a homeowner may challenge an assignment that is *void*. (*Glaski*, *supra*, 218 Cal.App.4th at pp. 1094-1095.) Interpreting a New York statute that has generated conflicting interpretations among various courts, the *Glaski* court concluded the best interpretation was that the attempted transfer to the securitization trust was void. This conclusion, it reasoned, "protects the beneficiaries of the . . . Securitized Trust from the potential adverse tax consequence of the trust losing its status as a [real estate mortgage investment conduit] trust under the Internal Revenue Code." (*Id.* at p. 1097.)

7

*Glaski* distinguished *Gomes* on two grounds. First, it narrowly interpreted *Gomes* as limited to challenges to the ability of the *nominee*, MERS, to participate in the foreclosure process. (*Glaski*, *supra*, 218 Cal.App.4th at pp. 1098-1099.) Second, the court relied on the "'specific factual basis'" language *Glaski* employed to distinguish the federal cases. (*Id.* at p. 1099.) *Glaski* found the plaintiff's allegations had met that requirement.

Several cases both before and after *Glaski* have reached the opposite conclusion. (E.g., *Mendoza v. JPMorgan Chase Bank, N.A.*, review granted Nov. 12, 2014, S220675; *Keshtgar v. U.S. Bank, N.A.*, review granted Oct. 1, 2014, S220012; *Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75 (*Siliga*); *Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495 (*Herrera*); *Jenkins v. JPMorgan Chase Bank, N.A.* (2012) 216 Cal.App.4th 497 (*Jenkins*); *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256 (*Fontenot*).) Federal courts have likewise largely rejected *Glaski* as unpersuasive. (See *Kan v. Guild Mortgage Co.* (2014) 230 Cal.App.4th 736, 744 [collecting cases].) In particular, the Second Circuit Court of Appeals has rejected *Glaski's* analysis on the standing issue, holding that under New York law an improper transfer to an investment trust is *voidable*, not void, and thus a third party plaintiff has no standing to challenge such a transfer. (*Rajamin v. Deutsche Bank National Trust Co.* (2d Cir. 2014) 757 F.3d 79, 90.) And more recently the New York Supreme Court, Appellate Division, concluded a borrower has no standing to challenge improper assignments in this context. (*Wells Fargo Bank, N.A. v. Erobobo* (N.Y. 2015) 127 A.D.3d 1176, 1178 [9 N.Y.S.3d 312, 314] ["Erobobo, as a mortgagor whose loan is owned by a trust, does not have standing to challenge the plaintiff's possession or status as assignee of the note and mortgage based on purported noncompliance with certain provisions of the PSA"].)

8

In our view, the principal defect in the *Glaski* ccourt's analysis is its failure to assess prejudice. A plaintiff alleging a defect in the assignment of a mortgage must demonstrate prejudice. For example, in *Siliga*, where the plaintiffs made essentially the same allegations as those made here, the court affirmed the sustaining of a demurrer on, among other grounds, the plaintiffs' inability to demonstrate prejudice: "the [plaintiffs] fail to allege any facts showing that they suffered prejudice as a result of any lack of authority of the parties participating in the foreclosure process. The [plaintiffs] do not dispute that they are in default under the note. The assignment of the deed of trust and the note did not change the [plaintiffs'] obligations under the note, and there is no reason to believe that . . . the original lender would have refrained from foreclosure in these circumstances. Absent any prejudice, the [plaintiffs] have no standing to complain about any alleged lack of authority or defective assignment." (*Siliga, supra*, 219 Cal.App.4th. at p. 85.) Likewise, in *Fontenot*, where the plaintiff also challenged a foreclosure based on an invalid assignment of a mortgage, the court affirmed the sustaining of a demurrer on the basis that plaintiff could not demonstrate prejudice: "Even if MERS lacked authority to transfer the note, it is difficult to conceive how plaintiff was prejudiced by MERS's purported assignment, and there is no allegation to this effect. Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor. As to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note. Plaintiff effectively concedes she was in default, and she does not allege that the transfer to HSBC interfered in any manner with her payment of the note [citation], nor that the original lender would have refrained from foreclosure under the circumstances presented. If MERS indeed lacked authority to make the assignment, the true victim was not plaintiff but the original lender, which would have suffered the unauthorized loss of a $1 million promissory note." (*Fontenot, supra*, 198 Cal.App.4th at p. 272.)

9

*Glaski* did not analyze these holdings, nor did it mention the word "prejudice." This omission is fatal to *Glaski's* holding, and thus we decline to follow it. In the absence of prejudice, a cause of action based on technicalities in the chain of title serves no other purpose than to permit the borrower to continue living in the home without paying for it. To the extent the various financial institutions involved object to the manner or validity of the assignments involved, they can sort the matter out themselves, probably without recourse to the courts. We see no benefit in permitting a defaulted borrower to maintain such a suit in the absence of real harm to the borrower.

Plaintiff's complaint does not adequately allege prejudice. Plaintiff alleges in vague and conclusory terms that the allegedly improper assignments have "caused the value of the Home to significantly decrease and has, in effect, caused the Plaintiff to lose either all or a substantial part of the equity they [*sic*] would have created in their [*sic*] Home after making payments." We fail to see how assignments conducted in private could possibly affect the value of plaintiff's home. And to the extent the assignments were recorded and thus public, assignments of notes and deeds of trust are commonplace occurrences. Without some explanation of how these particular assignments impacted plaintiff's home value in a unique and detrimental way, plaintiff's conclusory allegation is insufficient to allege prejudice. Beyond that, we note that plaintiff has not even alleged what payments he made or did not make, nor what actions defendants have or have not taken to threaten foreclosure, rendering it nearly impossible to assess prejudice. And finally, plaintiff has not articulated how he could amend his complaint to allege prejudice. Indeed, in response to the court's ruling below, plaintiff simply submitted on the tentative without any attempt to articulate facts he might allege that would survive a demurrer. Accordingly, the court properly sustained defendants' demurrers without leave to amend.[5]

---

[5] Because we conclude the demurrers were properly sustained based on the allegations in the complaint, we need not reach plaintiff's contention that the court

10

## DISPOSITION

The judgment is affirmed.  Defendants shall recover their costs on appeal.


IKOLA, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


MOORE, J.

---

impermissibly relied on the truth of the content of judicially noticed documents.